THE PEOPLE, *ex rel.* Cyrus Jefferson, *vs.* EDWIN GARDNER, BENJAMIN BISHOP and SYLVANUS E. BRADY, assessors of the town of Warsaw.

A resident of this state is not liable to be assessed and taxed here, for his capital invested in loans in other states upon securities taken and held in those states, by his agents.

Whether the owner of property thus situated is liable to be assessed here, for it, depends upon the question whether it can be properly and legally held to be within this state, at the time of the assessment.   As such property has no actual location or *situs* within this state, notwithstanding the owner resides here, it is not subject to taxation.

CERTIORARI to review the decision of the defendants, as assessors, determining that the relator was liable to be assessed in this state, and refusing to reduce the assessment.

The People *v.* Gardner.

The relator is an inhabitant and resident of the town of Warsaw, in Wyoming county. And as such he was assessed by the defendants, who are the assessors of that town, as the owner of personal property to the amount of $50,000. Of this amount, $42,000 were assessed for personal property or securities in the hands of his agents in the states of Illinois and Wisconsin, where such securities were taken. The relator applied to the defendants to correct this assessment by deducting that amount from the assessed value of his personal property, on the ground that it was not liable to taxation under the laws of this state. For the purpose of sustaining this application he produced and filed with the defendants his own affidavit, and was examined by them under oath. The affidavit and examination proved to the defendants' satisfaction that the facts were truly stated, on which the relator's application was made. They showed that the relator, for five years and upwards prior to the time of the making of the assessment, had been engaged in loaning money on real estate securities in the states of Wisconsin and Illinois through local agents residing in those states, and selected and appointed by him for that purpose. With the exception of loans for less than $2000 the loans were made on real estate security. They were secured by trust deeds and mortgages which were recorded under the laws of the states in which the respective securities were taken. The greater part of the moneys were loaned in the state of Illinois, and trust deeds taken in the name of the agent, for the security of the loans. The relator instructed his agents to loan his moneys only on real estate securities, and the loans made on the personal security of the borrowers were made without any direction from him that they should be so loaned. All the securities received for loans of money were retained in the hands of the agents receiving them, the relator receiving such interest as was

paid to him, from the agents. And the moneys collected upon the securities were, from time to time, during the period through which this business had been transacted, re-loaned by the relator's agents, in the same manner as the previous loans had been made by them. About two thirds of the moneys loaned by the agents were, at the time of the assessment, the accumulations and increase derived from the loans previously made in the states of Wisconsin and Illinois. And at the time of such assessment, all of such moneys, as well as the securities taken for them, were in the said states. The assessors decided that the relator was liable to be assessed in this state, for the moneys so loaned in those states, and refused to reduce the assessment. And the certiorari in this case was issued for the purpose of reviewing the decision.

*H. S. Comstock,* for the relator.

*L. W. Thayer,* for the defendants.

DANIELS, P. J. The statute of this state relating to, and designating the subjects of, taxation, provides in general terms, that, " All lands and personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exceptions " afterwards " specified." (1 *R. S. 5th ed.* 905, § 1.) And the object of the subsequent legislation had upon the subject was not to enlarge the description thus given of taxable property, but for the purpose of more clearly specifying and describing it. When, therefore, it was afterwards, enacted that " Every person shall be assessed in the town or ward where he resides when the assessment is made, for all personal estate owned by him, including all personal estate in his possession or under his control as agent, trustee, guardian, executor or administrator, and in no case shall property so held under either of these trusts be asses-

The People *v.* Gardner.

sed against any other person," (1 *R. S. 5th ed.* 908, § 5,) it was not done for the purpose of extending the principle of taxation previously adopted, but merely for the purpose of more particularly defining the manner in which the assessments should be made. And to secure that end, the persons to whom personal estate should be assessed, and the place where the assessment must be made, are very clearly and precisely declared. The question whether this section enlarged the rule prescribed by that which was first referred to was distinctly presented to the Court of Appeals for its decision in the case of *The People ex rel. Hoyt* v. *The Commissioners of Taxes,* (23 *N. Y. Rep.* 224, 230–234,) and it was there held that it did not. And that court therefore held that the circumstance upon which the liability of personal property to taxation depended was, whether or not it was at the time within this state. And if it were, then it was liable to taxation under our laws; unless it were here for sale on commission for the benefit of the owner, or consisted of moneys transmitted to agents for the simple purpose of investment, or some other similar object. Where property or moneys may be here for either of those purposes, it is expressly exempted from taxation by the section of the statute last cited.

In order to determine whether the relator was liable to be assessed and taxed for his capital invested in loans in the states of Wisconsin and Illinois, for which securities were taken and held in those states by his agents, it will be necessary to ascertain whether the property can be properly and legally held to have been in this state at the time when the assessment was made. If it were within this state at that time, then the assessment was legal and proper ; if not, the assessment was illegal, and the assessors had no jurisdiction over that part of the property assessed by them. For, as has been already shown, the statute only renders such personal property liable to taxation as may be within this state.

It is clear that the property, on account of which the assessment was made, had no actual location or *situs* within this state. For the moneys loaned, and the securities taken and held for the payment of such loans, were actually in the states of Wisconsin and Illinois. So far as they were things having a substantial existence, they were so in those states, and not elsewhere. As such they were within the sole protection of the laws of those states. The validity of the agreements under which the loans were made, the protection of the securities taken for their payment, and the remedies provided for enforcing the securities, depended alike upon such laws. In neither respect did the relator derive any benefit whatever from the laws of this state. And the consideration from which the right to impose taxes has been theoretically derived, has therefore no foundation for its support, so far as the assessment in controversy is concerned. Under that theory the government extending the security of its protection to property, is justly entitled by way of taxes upon it to its ratable equivalent of the expenses incurred for the protection afforded to it. In this instance that was not done, and could not be done, by the government of this state. But it was done by the governments of the states in which the loans were made. And the recompense for that service should justly be returned to the authorities of such states. This state has performed nothing whatever for which such recompense can be properly demanded by its authorities. But even though the assessment may have no just theory in fact to rest upon, the learned counsel, who with very great zeal and ability argued this cause on the part of the defendants, claimed that it was legal and valid, because the statute of 1851 declared that the assessment should be made for all personal estate *owned* by the person assessed. Although this language is general and broad enough to include all the personal estate of the person assessed, wheresoever it

The People *v.* Gardner.

may be situated, the Court of Appeals, in the case already referred to, have held that it should not be so construed. But that its terms must be so far restricted as to confine them to property within this state. The fact, therefore, that the property was owned by the relator was not alone sufficient to justify the action of the assessors. To produce that result, the additional circumstance was equally essential, that the property should be within this state. Under this construction, the original section contained in the Revised Statutes, and the second section of the act of 1851, must be read together. And then, instead of providing generally that the owner shall be assessed in the town or ward where he resides, for all personal estate owned by him, that section will provide that he shall be assessed for all personal estate owned by him within this state. When thus read, this is the plain and obvious meaning of the law. (1 *R. S. 5th ed.* 905, § 1; 908, § 5.)

In order to avoid the consequences of this exposition of the statutes, the same learned counsel very earnestly urged upon the consideration of the court, that as this property consisted of what the law denominates choses in action, being obligations of an intangible nature, it was within the state, because the relator was its owner. That from its nature it must follow the person of him to whom the obligations are owing. By a legal fiction the personal estate of the owner has, for some purposes, been deemed to follow its owner. But in the adjustment of systems of taxation this fiction has been very generally rejected, on the ground that it was productive of unjust consequences. And other cases exist where, for a like reason, its application has been denied. As to visible and tangible personal property capable of having an actual *situs,* this fiction has not been allowed to prevail, so as to render such property liable to taxation when it was not within this state, even though the owner was here. (*The People* v. *The Commissioners of Taxes,* 23 *N. Y. Rep.* 224.) And the reasoning of the

judge, through which that conclusion was reached, is equally applicable to the present case as it was to that, though it was not intended to be applied to a case of this description. Upon that subject Judge Comstock remarked: " This conclusion is intended to embrace only property which is visible and tangible so as to be capable of a *situs* away from the owner or his domicil; and I do not consider the question in reference to personal estate of a different description. It must be within this state, in order to be subject to taxation, for so is the statute; but that may be true of choses in action, and obligations for the payment of money due to a creditor resident here from a debtor whose domicil is in another state. If the securities are separated from the person and domicil of the owner, and are actually in the hands of an agent in another state for collection, investment and re-investment there, it may be that capital thus situated should be regarded as foreign and not domestic, in the absence of any special statutory provision intended for such a case." (*Id.* 240.) That it should be so regarded results, necessarily, on the theory of taxation previously considered, from the circumstance that the right to tax is derived from the protection afforded by the laws to the property taxed. And that theory is maintained by this decision as the true source from whence the right of taxation is legally as well as logically secured.

In the case of *Catlin* v. *Hull*, (21 *Verm. Rep.* 152,) this precise question was presented, under similar statutory provisions to those existing in this state. In that case the moneys were loaned on promissory notes by an agent residing in the state of Vermont, the principal residing in the city of New York, but the securities were kept in the possession of the agent. The Supreme Court of the state of Vermont held the property taxable in that state, rejecting the application of the legal fiction that the *situs* of the property followed that of the owner. This case was

The People *v.* Gardner.

cited with approbation, and followed so far as the principle settled by it was applicable, in the disposition which was made of the case of *Hoyt* v. *The Commissioners of Taxes,* (23 *N. Y. Rep.* 238.) And when this principle was afterwards incidentally brought before the same court, Judge Davies remarked that the case of *Catlin* v. *Hull,* had been commented upon and approved in that court. (*The People* v. *Commissioners of Taxes,* 35 *N. Y. Rep.* 440.) In the case of *The Board of Supervisors of Tazewell Co.* v. *Davenport,* decided by the Supreme Court of Illinois, the question now presented did not arise. That was disposed of upon the circumstance established by the evidence, that the complainant was a resident of the county in which the tax was imposed, and for that reason was liable to taxation under the laws of that state.

The present controversy must be disposed of upon the authority of the principle sanctioned and settled by the decision made in the case of *Hoyt* v. *The Commissioners of Taxes,* (*supra,*) within the reasoning of which it is plainly included, and of *Catlin* v. *Hull,* which the Court of Appeals, on that, as well as a subsequent occasion, adopted, as containing the true rule of law applicable to the disposition of questions of this description. Within these authorities the assessment now complained of was unauthorized by the statutes under which it was made, and it should, therefore, be reduced in conformity to the application which the relator made to the defendants for that purpose. This, according to the return made to the writ, will reduce the assessment of the relator's personal property to the sum of $8000.

Judgment accordingly.

MARVIN, J. dissented.

[ERIE GENERAL TERM, May 4, 1868. *Daniels, Marvin, Davis* and *Barker,* Justices.]