The People ex rel. Charles R. Westbrook et al., Appellants, v. The Board of Trustees of the Village of Ogdensburgh, Respondents.

By the statutes of this State, assessors are made the judges of the value of property for the purposes of taxation. They are not bound by proof produced before them, but are required to exercise their own judgment notwithstanding such proof, and the case must be an extraordinary one which will authorize the Supreme Court to review their judgment upon certiorari.

If, however, the assessors place upon the roll property not liable to taxation, and they refuse upon the application of the person aggrieved to strike it off, their action can be reviewed upon certiorari.

Where, at the time of the making out of an assessment roll, the agent of a non-resident has moneys belonging to his principal on deposit in bank, it is liable to be assessed and taxed, although, prior to the time appointed for correction of the roll, it has been withdrawn and used.

Money due upon a contract for the sale of lands is personal property, and where such a contract belonging to a non-resident is in the hands of an agent who is a resident of an incorporated village, it may, for the purposes of municipal taxation, be assessed to the agent and taxed.

The provisions of the act "to subject certain debts due to non-residents to taxation" (chap. 371 of the Laws of 1851), providing that debts due from inhabitants of this State to non-residents for the purchase of real estate shall be assessed in the name of the creditor and taxed in the town or county where the debtor resides, is applicable only to taxation in towns; and as to taxation in villages, the general law authorizing assessments to agents (1 R. S., chap. 13, title 1, § 5, as amended in 1851) remains in force.

By the charter of the village of Ogdensburgh (as amended, chap 62, Laws of 1865), in making out the assessment roll the trustees are required to follow the town assessment roll, adding thereto property which has been omitted, etc. The town assessors had assessed one P. for $50,000 of personal property. He appeared before them and objected to the assessment upon the sole ground that he was a non-resident, and they struck it off. No assessment appeared upon that roll against his agents who had the property under their control. *Held*, that within the meaning of the charter the personal property was omitted and was properly added to the village assessment roll and assessed to the agents.

(Argued October 4, 1871; decided January term, 1872.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial district, quashing a common-law writ of certiorari, which was allowed at a Special Term of the Supreme Court, to rescind an assessment against the relators, as agents of George Parish, a resident of Bohemia, made in 1866. The return of the defendants to the writ shows that their predecessors in office made the assessment complained of, and it contains all the proceedings had before the board of trustees, and their action thereon. The leading features of the return and other facts appear sufficiently in the opinion.

*L. Hasbrouck, Jr.*, for the appellants. The property was not assessable to defendants as agents. (*Lord* v. *Arnold*, 18 Barb., 104; *Hoyt* v. *Com. of Taxes*, 23 N. Y., 224.) Assessors must decide upon the evidence produced before them, and are bound to follow the statements under oath of the person aggrieved. (*People* v. *Reddy*, 43 Barb., 539, 543.) The remedy by certiorari is proper. (*Heywood* v. *City of Buffalo*, 4 Ker., 534; *M. B. Ins. Co.* v. *Supervisors*, 2 Abb. [N. S.], 233.)

*George Morris* for the respondent. The decision of General Term was matter of discretion, and is not appealable. (*People ex rel.* v. *Stilwell*, 19 N. Y., 531; *Mt. Morris Square*, 2 Hill, 28.) This question may be raised on argument. (*Peo-*

ple v. *Mayor N. Y.*, 2 Hill, 9; *People* v. *Supervisors of Alleg.*, 15 Wend., 198; *S. & W. R. R. Co.* v. *McCoy*, 5 How. Pr. Rep., 378.) The effect of the writ being to restrain the collection of village taxes, it was improvidently granted. (2 Strange, 932; *The King* v. *King et al.*, 2 T. R., 234; *People* v. *Supervisors of Allegany Co.*, above; *People* v. *Supervisors of Queens*, 1 Hill, 200; *People* v. *City of Rochester*, 21 Barb., 665; *Case of Fifty-first Street*, 3 Abb., 232.) The decision of the trustees as assessors was a judicial determination. (*Alb. & W. S. R. R. Co.*, v. *Canaan*, 16 Barb., 244; *Van Rensselaer* v. *Cottrell*, 7 Barb., 127; *Same* v. *Witbeck*, id., 133; *Barhyte* v. *Shepard*, 35 N. Y., 238; *Swift* v. *City of Poughkeepsie*, 37 id., 511.) The assessors were not bound by relators' estimate. (*Alb. & W. S. R. R. Co.* v. *Canaan*, 16 Barb., 250.) The property was properly assessed to relators as agents. (*Hoyt* v. *Com. of Taxes*, 23 N. Y., 232; *I. L. A. Society* v. *Com. of Taxes*, 28 Barb., 322.) The court will only look into the return to see if defendants had jurisdiction. (*Alb. & W. S. R. R. Co.*, 16 Barb., 244, 248, 250; *People* v. *City of Rochester*, 21 Barb., 664; *People* v. *Stilwell*, 19 N. Y., 532.)

EARL, C. The charter of the village of Ogdensburgh, as amended by chapter 62 of the Laws of 1865, provides that on or before the first day of May, in each year, it shall be the duty of the trustees to prepare an assessment roll of the property in said village subject to taxation, with the valuation thereof as set down in the last preceding town assessment roll, or as the same shall be changed under the authority given in the charter; and to add to such assessment roll any property liable to taxation with the taxable value thereof, which may have come within the corporation since the making of the town assessment roll, or which may have been omitted thereon, and, in their discretion, to reassess any property which, since the making of the town assessment roll, has changed in value. The trustees are clothed with the same power to administer oaths and correct valuations as is given

by law to town assessors, and they may employ a special clerk to do the clerical duty and ascertain unassessed property under their direction; and upon the completion of the roll, they are required to cause notice to be published of a time and place to hear objections. At the time and place specified, they are required to meet and hear objections and correct the roll as the facts may require, and the roll, when so corrected, is declared to be final and conclusive.

The facts contained in the return to the writ cannot be disputed, and must be taken as true.

It has been finally settled that a common-law certiorari to review the proceedings of assessors, brings up the merits as well as questions of jurisdiction and regularity, and that where assessors have neither exceeded their powers, nor been irregular in exercising them, the court will still, upon the facts appearing in the return, examine and correct their decisions if erroneous. (*People* v. *The Assessors of Albany*, 40 N. Y., 154.) I will, therefore, proceed to examine this case upon the merits.

The return shows that the relators were, at the time the assessment was made, the sole general agents of George Parish, a resident of Bohemia, and that as such agents they had possession and control of "all his real and personal property and estate, debts, dues, choses, claims and demands," in said village and within the county of St. Lawrence; that the trustees assessed them as such agents for $50,000 of personal property, and that after hearing their objections at the time and place appointed for that purpose they reduced this sum to $30,000. The relators claimed that the whole amount should be stricken off from the assessment roll, and the first inquiry is, whether they had $30,000 of taxable personal property in their possession, or under their control. The law makes it the duty of the trustees or assessors, when the property is not upon the town assessment roll, to place a value upon it for the purpose of taxation. They are to search out the property, and place a value upon it, and then place it upon the assessment roll. When they have done this, the roll furnishes *prima*

*facie* evidence that the property is taxable, and its value. After the completion of the roll, they are required to give notice of a time and place to hear objections, and at such time and place they are required to hear proofs and objections, and to make corrections as town assessors are required to.

By section 6 of chapter 176 of Laws of 1851, as amended by chapter 536 of Laws of 1857, it is provided that "whenever any person on his own behalf, or on behalf of those whom he may represent, shall apply to the assessors of any town or ward to reduce the value of his real and personal estate, as set down in the assessment roll, it shall be the duty of such assessors to examine such person under oath, touching the value of his or their said real or personal estate, and after such examination and such other supplementary evidence, under oath, as shall be presented by the party or person aggrieved, they shall fix the value thereof at such sum as they may deem just; but if such person shall refuse to answer any question as to the value of his real or personal estate, or the amount thereof, or present supplementary evidence under oath to justify a reduction, the said assessors shall not reduce the value of such real or personal estate." By this statute the assessors are not bound by the oath taken before them. They are required to hear the proofs, and then to fix the value "at such sum as they may deem just." Where the property is visible, the assessors are supposed to have viewed it. If an oath should be made before them that certain land assessed is worth but $50 per acre, they may still, if they think it worth so much, assess it at $100 per acre; or if an oath should be made that personal property is worth only $1,000, they may still assess it at $3,000. The statute makes them the judges of the value of property for the purposes of taxation. They are required to exercise their judgment as to its value, notwithstanding any proof that may be produced before them, and the case would have to be a very extraordinary one which would authorize the Supreme Court upon certiorari to review their judgment. Indeed, it would be quite impracticable in most cases for the

Supreme Court upon certiorari to correct the judgment of the assessors as to values, and my attention has been called to no case where it has been done.

If, however, the assessors place upon the assessment roll property not liable to taxation; and they refuse, upon the application of the person aggrieved, to strike it off, then their action can be reviewed by certiorari; as if they assess personal property which has its *situs* in another State (*Hoyt* v. *The Commissioners of Taxes*, 23 N. Y., 224; *People* v. *Gardner*, 51 Barb., 352), or which is exempt from taxation by the laws of this State or of the United States.

The facts returned show that the relators had in their possession, as such agents, a large amount of household furniture and effects in the mansion of their principal in the village, consisting of silver and plated ware, mirrors, books, pictures, wines, cigars and other articles. A list of these articles seems to have been furnished by one of the relators, with the value of each article set down, and the value of the whole, as estimated by him, is $5,896. There is no evidence what value the trustees put upon this property. They were also acting under oath, and they may have valued it at a much larger sum. Suppose they valued it at $10,000 or $15,000; how could the Supreme Court or this court determine that the one or the other party was in error as to the valuation— all the parties really giving their estimate under oath? We are unable to say, therefore, how much of the $30,000 was made up or ought to have been made up of this furniture. It also appears that on the first day of May the relators, as such agents, had $6,000 in money in banks. It matters not that it was subsequently used. It was there when the assessment was made, and was thus liable to be assessed. It may, therefore, be assumed that this $6,000 was part of the $30,000. It also appeared that the relators, as such agents, had in their possession contracts for the sale of land amounting to more than $50,000, less (it is not stated how much less) than $20,000 of which was for land sold in the town in which the village of Ogdensburgh was situated, and hence we may

assume that nearly $20,000, on account of these contracts, entered into the said sum of $30,000. It does not appear, therefore, that the trustees erred in the *amount* at which they assessed the relators; and the only other question to be considered is, whether this amount was properly assessed to them as the agents of Parish. It appears by the return that the town assessors had assessed George Parish for $50,000 of personal property upon the assessment roll of 1865, and that he appeared before them and objected to the assessment, and that they struck it off upon the sole ground that he was a non-resident of the United States. Upon that roll his agents were not assessed for any of his personal property in their possession or under their control.

By the charter of the village of Ogdensburgh, as above referred to, the trustees are required to prepare an assessment roll of the property in said village subject to taxation, with the valuation thereof, and they are required to follow the town assessment roll, except they may add to the assessment roll property which has been omitted from the town assessment roll, and make certain other alterations specified. The $30,000 in question was not upon the town assessment roll, and was clearly, within the meaning of the provisions of the charter above referred to, omitted therefrom. It was intended by the charter that no property taxable in the village should escape taxation, and that the last town assessment roll should be the guide in all cases where the property appeared upon it, unless such property had changed in value. But if the property did not appear thereon, either because the same had been for any cause omitted, or had been brought into the corporation since the town roll was made, then the trustees were to add the same to their roll with a proper valuation. Hence the trustees were authorized to add this property to their roll; and the next inquiry is whether any error was committed in assessing it to the relators as agents.

While the charter of the village of Ogdensburgh makes no particular provisions as to the form of the assessment roll,

and does not specify what property within the village is taxable, nor how the property shall be assessed, nor to whom it shall be assessed, yet it was clearly the intention of the legislature that in these particulars the general laws in reference to taxation should govern so far as they are applicable.

It is provided by section 1, title 1, chap. 13, part 1 of the Revised Statutes, that all lands and personal estate within this State shall be liable to taxation ; and by section 3 of the same title, personal estate is defined to include "all household furniture, moneys, goods, chattels, debts due from solvent debtors, whether an account, contract, note, bonds or mortgage, public stock, and stocks in money corporations." By section 5 of title 2 of the same chapter, as amended in 1851, it is provided that every person shall be assessed in the town or ward where he resides, when the assessment is made, for all personal estate owned by him, including all personal estate in his possession or under his control as agent, trustee, guardian, executor or administrator.

That the furniture in the mansion and the money in the bank were, under these provisions, properly assessable to the relators is not seriously disputed. And I am unable to see why the money due upon the land contracts must not be assessed in the same way. The debts due upon these contracts are personal estate, the same as if they were due upon notes or bonds ; and such personal estate may be said to exist where the obligations for payment are held. Notes, bonds and other contracts for the payment of money have always been regarded and treated in the law as personal property. They represent the debts secured by them They are the subject of larceny, and a transfer of them transfers the debt. If this kind of property does not exist where the obligation is held, where does it exist ? It certainly does not exist where the debtor may be, and follow his person. And while, for some purposes in the law, by legal fiction, it follows the person of the creditor and exists where he may be, yet it has been settled that for the purpose of taxation, this legal fiction does not, to the full extent, apply, and that

such property belonging to a non-resident creditor may be taxed in the place where the obligations are held by his agent. (*Hoyt* v. *The Commissioners of Taxes*, 23 N. Y., 238; *The People* v. *Gardner*, 51 Barb., 352; *Catlin* v. *Hull*, 21 Vermont, 152.)

It is claimed, on the part of the appellants, that chapter 371 of the Laws of 1851 has some bearing upon this case. Section 1 of that act provides that "all debts owing by inhabitants of this State to persons not residing within the United States, for the purchase of any real estate, shall be deemed personal property within the town or county where the debtor resides, and as such, shall be liable to taxation in the same manner and to the same extent as the personal estate of citizens of this State." The remaining sections of the act provide for the assessment, in the name of the non-resident creditor, of these debts in the towns of the county where the debtors reside; and also provides a peculiar mode for the collection of the tax.

Without this act, all these debts would have to be assessed in the town where the agent of the creditor holding the contracts resides; and the principal purpose of this act, manifestly, was to distribute the benefits of the taxation to the various towns in which the lands are situated and the debtors reside. The act applies solely to taxation in towns, and the whole proceeding providing for the collection of the tax is applicable only to taxation in towns, and could not be applied to taxation in villages. Hence, as to taxation in villages, the general law authorizing assessments to agents, etc., remains in force.

I have, therefore, upon the merits of this case, reached a conclusion adverse to the relators, without examining or passing upon various technical objections raised and discussed by the counsel for the respondents.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.