HORACE H. WILCOX v. ARCHIBALD ELLIS, *Treasurer, &c.*

1. ASSESSMENT AND TAXATION; *Purchase-Money Conditionally due on Sale of Lands in Another State, not Taxable in Kansas.* In the year 1868 W. agreed in writing to sell and convey certain lands in Illinois to L; and L., in consideration therefor, executed his promissory notes to W., which notes were by agreement deposited with certain bankers in Illinois. These were the only instruments executed between the parties. By agreement L. was to make payments on the notes from time to time, paying at least the value of eighty acres of the land annually until all the land should be paid for, and was to receive a deed from W. for each eighty-acre tract of land *as* he (L.) paid for the same, but if L. should at any time fail to make said annual payment he was to forfeit all payments made after the last preceding conveyance. The land was to remain the property of W. until paid for. On March 1st, 1872, the value of the land not yet paid for was $6,000, and the amount of the notes not yet paid was the same. The notes still remained with said bankers in Illinois. At that time (March 1st, 1872,) said W. was a resident of Butler county, Kansas, and during that year the taxing officers of said Butler county assessed and levied taxes against W. on the said $6,000 not yet paid on said land: *held,* that said $6,000 was not taxable in Kansas.

2. ———— Where land is sold and conveyed, and notes given for the purchase-money, the vendee may be taxed for the land, and the vendor for the notes received for the purchase-money. But where one still owns the land, having only conditionally sold it, as in this case, he cannot legally be taxed both for the land and for the notes executed and conditionally deposited with a third party for the purchase-money.

*Error from Butler District Court.*

INJUNCTION, brought by *Wilcox,* to restrain *Ellis,* as county treasurer, from collecting the tax levied on $6,000 assessed as personal property. The agreed statement of facts shows that *Wilcox* had been a resident of Plum Grove township, in Butler county, for five years previously, and was such resident on the 1st of March 1872; that he listed under oath and returned to the proper assessor his personal property for that year, shortly after the first of March, and that afterward the county clerk increased the amount of *Wilcox's* personal property $6,000. *Wilcox* paid all his other taxes, and then

sought to enjoin the tax of $229.50 levied on said $6,000. Other facts are stated in the opinion. The district court, at the September Term 1873, refused the injunction prayed for, entered a decree dismissing plaintiff's petition, and gave judgment in favor of *Ellis* for costs. *Wilcox* appeals, and brings the case here on error.

*R. M. Ruggles*, for plaintiff:

In the year 1868 Wilcox agreed in writing, to sell certain real estate in the state of Illinois to one Lovatt, for a price agreed upon between them, and Lovatt gave his notes for the amount, it being agreed that the notes were to be left at a banking-house in Hancock county, Illinois, and as fast as said Lovatt should make payment on said notes from time to time, the plaintiff should convey to him a proportionate amount of said real estate. No deed was made to Lovatt at the time of the sale. No mortgage was given to secure the payment of the notes. Whenever an amount was paid equal in amount to the value of eighty acres, then a conveyance was to be executed by plaintiff to Lovatt for such eighty acres, and so on until all the land should be paid for. On said contract $6,000 remained unpaid on the first day of March 1872, and is the same $6,000 placed on the tax-roll by the clerk of Butler county in said year.

1. Were said notes personal property? We claim not. The notes were given with the contract, and constituted a part thereof, both being in reference to the sale of real estate not yet conveyed. The notes by the said agreement were never the property of plaintiff, but were delivered to the bank *in escrow*. They were not to be delivered to plaintiff, but only the proceeds of the notes as fast as paid. It was property over which plaintiff could exercise no control whatever, and so far as he is concerned his taxable interest would be the same if no notes had been executed, and there had been merely the agreement in writing to sell. If the plaintiff had agreed to execute a conveyance to the lands as fast as Lovatt paid certain amounts of money, and the money to be payable

from year to year, but no notes had been executed, it certainly cannot be claimed that plaintiff would have had such an interest in the agreement as would be taxable as personal property; that is, it certainly could not be taxable as a debt due plaintiff. What difference does it make, then, that the notes were executed? They are no more an indebtedness due plaintiff, as they were merely delivered *in escrow* to be of effect only upon their payment, than the agreement to pay certain sums in the written agreement would be an indebtedness due plaintiff. If the notes were paid, then, as fast as payment was made, plaintiff would have a personal-property interest which would be taxable, and not till then.

There is still another reason why this $6,000 should not be taxable as personal property to plaintiff. Until said notes were paid, *the real estate was to remain the property of the plaintiff.* There can be no doubt that the equitable as well as the legal title in the real estate, while the notes were unpaid, remained in plaintiff, and he was liable for the taxes on the real estate while such notes were unpaid. Then, if his $6,000 of real estate were subject to taxation (as it certainly was) it cannot be held that the personal property of $6,000 in notes which merely conditionally represented the $6,000 in real estate were taxable, for if it is so held, the plaintiff will be taxed for $12,000 of property, when he is the owner of but $6,000.

But if taxable at all, the next question to determine is, where is said $6,000 in notes taxable? We claim that these notes, if taxable at all, are taxable in the state of Illinois. (See statutes of Illinois, ch. 89, §§ 45, 46, 48.) But if it is claimed that we have no right to refer to the statutes of Illinois, as they were not read in evidence on the trial of the cause in the court below, (which proposition we deny; 3 Lansing, (N. Y.) 341;) then we say, that in the absence of proof to the contrary, it will be presumed that the laws of Illinois upon the subject-matter in litigation are the same as the laws of this state; and presuming the laws of Illinois to be the same as those of Kansas, would the said $6,000 (supposing it

to be personal property) be subject to taxation in the state of Illinois? We take it that it would. Every dollar of real and personal property within the state of Kansas is subject to taxation, unless the same falls under the provisions of § 3 of art. 2, or § 5 of art. 3, of our Tax Law, ch. 107, Gen. Stat. It cannot certainly be claimed that the $6,000 in question is included in either of the said sections above named. That such was the intention of the legislature is evidenced by § 10 of art. 3 of said ch. 107. Can any one own or possess personal property in any different relation than specified in said § 10? We cannot see how one can. Then, presuming the laws of Illinois to be the same as Kansas, the $6,000 is certainly subject to taxation *in Illinois,* if subject to taxation at all. But there is still another reason. There is a principle, but one merely of fiction, that *mobilia personam sequuntur,* upon which the defendant entirely relies in this case. This principle (so called) is by no means of universal application, and always yields when justice so demands. Personal property as well as real property has a *situs;* and only for certain purposes, (and those very few, and growing fewer as time advances,) does the principle that "things movable go with the person," apply. We claim that wherever personal property is *situated,* there is it subject to taxation, notwithstanding the fact of the owner being a nonresident of the state where the same is situated: 21 Vt., 152; 51 Barb., 352; 17 How. Prac., 201; 48 N. Y., 397; 23 N. Y., 228; 14 Minn., 252; 40 Mo., 580; 19 Ill., 160; 21 Ind., 335; 27 Ind., 288; 11 Wallace, 430; Story's Conflict of Laws, § 550. In New York, it was held that loans in other states upon securities taken and held in those states by the agents of the owner resident of the state of New York, was not within the state of New York, and therefore not taxable there: 51 Barb., 352. In Missouri, it was held that the personal property of a resident actually situated beyond the limits of that state, is without its jurisdiction, and cannot be assessed for taxation within that state; but the property of a nonresident is taxable there, if it be situate within the local jurisdiction, whether in the

hands of its owner or its agent. 40 Mo., 580; 39 Mo., 476; and see 32 Penn. St., 381. Let us test the proposition, "that things movable follow the person of the owner," that is, the legal *situs* of personal property is the domicile of its owner. Suppose that a person, resident of this state, dies the owner of goods, chattels, credits and effects situate in another state, and an administrator was appointed in this state: can it be claimed that such an administrator can administer upon such personal property beyond the limits of this state, independent of some authority under the law of the state in which it is situated? We think not; but if the principle that the *situs* of personal property is the domicile of its owner, such administrator certainly could administer upon such property, as such property would legally, if not actually, be situated in this state. Williams on Ex., 377; Kent's Com., note c, 563.

The notes sought to be taxed were *never in the state of Kansas,* nor out of the state of Illinois, nor in any other place than at the bank in Hancock county, Illinois. Was it the intention of the legislature of this state to impose a tax upon the personal estate of its residents situate beyond its jurisdiction? We think not. The legislature of this state did not, like the legislature of other states, make a provision whereby the owner (resident of this state) of personal property, situate beyond its limits, might exempt such property from taxation by making affidavit, or giving other satisfactory proof, that such property was subject to taxation in the state in which it is situated. Then, no distinction can be made between personal property without the state, taxed where it is situated, and property without the state not taxed where it is situated. The legislature did not intend to tax personal property beyond the limits of this state, for such property would be subject to the burden of taxation in two places — where it is situated, and the domicile of its owner.

We have given the books a thorough examination, and we are unable to find any case deciding that personal property situated beyond the limits of a state is taxable in such state, except in the state of Kentucky, and those cases are decided

upon a peculiarity of the statutes of that state not possessed by the statutes of any other state in the Union, we believe. In that state, the statute expressly requires a person to list, on oath, a sum sufficient to cover what he is *worth from all sources*, not computing therein the first three hundred dollars in value, nor lands not within that state, *nor other property out of that state subject to taxation by the laws of the country where situate*, (Laws of Kentucky, 1837,) and at the same time provides a way to ascertain whether such property situate beyond the limits of the state is in fact *taxed* or *not* by the state wherein it is situated by requiring the person listing to make oath that such property is taxed in said state. Unless such affidavit is made, personal property situate beyond the limits of the state of Kentucky will be taxed to its owners resident within the state. There is no room for doubt as to the intention of the legislature in that state as to taxing personal property situate beyond its limits and owned by residents of the state, as it expressly says that such personal property shall be taxable in said state, *unless actually taxed where situated.* See also, 7 Dana, 338; 8 B. Monroe, 2; 14 B. Monroe, 648. But our statutes say nothing about property beyond the limits of the state in any way, not even providing for the exemption of personal property beyond the state actually taxed where situated, showing conclusively that the legislature never intended to tax property beyond its limits. But even if the legislature had so intended, or had said so in express terms, we contend that such legislation could not have been upheld as a proper exercise of the taxing power: 15 Wall., 300; 11 Wall., 430; Atlantic Monthly, January, 1874; Southern Law Review, April, 1874, p. 247.

*A. L. Redden,* county-attorney, for defendant:

The notes were the personal property of the plaintiff. Though this contract of sale is peculiar in its terms, yet its legal effect can be none other than the same as if a bond for a deed had been given by plaintiff to Lovatt for these lands, with agreement therein to convey the lands by parts, upon the

payment of each respective note. If Lovatt fails to pay any of the notes, plaintiff can tender him a deed for eighty acres and sue him on the note due, and recover. His remedy thereon would be just the same and just as effectual as if a formal bond for a deed had been given. That the notes by agreement were to be left at a bank, does not affect or control the nature of the transaction, nor abridge any of the plaintiff's rights under the contract, nor as owner of the notes. This was simply a place of deposit agreed upon for the mutual convenience of the parties; the plaintiff contemplated being, and has been, ever since the summer of 1868, a resident of this state; and Lovatt very naturally made a stipulation for his convenience, so that wherever plaintiff might be, these notes would be accessible to him when they matured, and he, upon payment, could have them delivered to him. The plaintiff could assign and transfer his right to them just as effectually as if they were in his possession, and his assignee, or indorsee, would then be entitled to receive the proceeds thereof. Any conveyance of these lands made by Wilcox after this contract of sale, would have transferred a title subject to all of Lovatt's rights and equities; just as much as if a bond for a deed had been held by Lovatt and plaintiff afterward conveyed to a third party. That the land was to remain the property of the plaintiff till the payments respectively were made, makes no difference, for it would be the same if notes had been given for the purchase-money and a bond for a deed had been given by the plaintiff, conditioned to convey upon the payment of the notes. Indeed, this contract of sale was a bond for a deed. The mere fact that it was called an agreement in writing to sell, does not change its nature. What else is a bond for a deed than simply an agreement in writing to sell? This agreement was accompanied by notes from the purchaser just as any bond for a deed would have been, and it is a mere play upon words to call it anything else. Though it is not stated in express terms that Lovatt went into the possession of these lands, yet this is the natural inference from the agreed facts, and the only infer-

ence that can be drawn therefrom. These notes then are taxable. In the case of *The People v. Rhodes*, 15 Ill., 304, it is expressly decided, that if A. sells a tract of land to B. for a specified sum, and gives a bond for a deed, and receives but a portion of the purchase-money in hand, and takes notes for the payment of the residue in annual installments, and B. goes into the possession of the land and lists it for taxation, that the said notes of A. must be assessed, and A. must pay the tax thereon. The same principle is decided in *People v. McCreery*, 34 Cal., 432. Plaintiff argues that these notes, being given with the contract in writing, constituted a part thereof, and that the contract can have no greater force than if the notes had not been given. This we deny in toto. But let us assume for argument sake, that such is the legal construction of this contract: we would then have debts due upon a contract in writing, for the sale of land; and we say *such debts are personal property.* 48 N. Y., 390.

But we think our legislature has expressly said that this $6,000 is personal property, and *that* when speaking upon this *very subject of taxation.* Art. 1, §§ 1 and 2 of the tax law, Gen. Stat., 1019. No one can contend that this $6,000 is embraced in the definition of "real property," "real estate," and "land;" and the legislature it would seem contemplated, and did embrace every other conceivable kind of property under the definition of "personal property," in the general sense of those words. And in the definition of personal property and credits, (§ 2 of tax law,) this $6,000 is clearly included. We have then the authority of our own statutes for saying, that this $6,000 is personal property.

And being personal property, it is taxable in Butler county. Plaintiff resided there on March 1st, 1872. The *property* of every person must be liable to bear an equal and just proportion of the public burdens, by way of taxation. This $6,000 is the indebtedness of Lovatt to plaintiff and is *the property of plaintiff.* This debt being the personal intangible property of the plaintiff, is taxable where he resides. It does not have and cannot have any other *situs* than the domi-

cile of the owner. That the maxim of the common law, *mobilia sequuntur personam*, applies to property as well for the purposes of taxation as any other, is clearly established by the authorities, and it is a maxim formed upon general utility, and is one which settles this case in our favor. Story Conflict of Laws, §§ 379 to 381; 8 B. Monroe, 2; 7 Dana, 340; 14 Ind., 27; 21 Ind., 335; 15 Wallace, 320. The case of the *City of Davenport v. The M. & M. Rld. Co.*, 12 Iowa, 547, decides a question exactly analogous to this one, it being upon the question of taxing a mortgage; and the court in the syllabus say: "Mortgages before foreclosure are choses in action, and as such attach to the person of the holder, and *are taxable at the place of his domicile.* They are not taxable in this state when the owners are nonresidents." And the same principle is expressly decided in *The People v. Eastman*, 25 Cal., 603. Our legislature adopts this principle, and incorporates it into the statute law of the state when it says, (§ 8, ch. 107, Gen. Stat.,) "All personal property shall be listed and taxed each year, in the township or city in which the person charged with the tax thereon *resides* on the first day of March." In *Griffith v. Carter*, 8 Kas., 565, this court say, on page 570, "The maxim of the common law was this, *mobilia sequuntur personam.* The domicile of the owner drew to it his personal estate wherever it might happen to be. In the absence of any statutory provision to the contrary, this common-law rule would control, and *personal property be taxable where the owner had his domicile.* The statute has in plain language affirmed the common-law rule." It will not do to say that the statutory provision above quoted and the decision of this court referred to property situate in this state, for that would be begging the question; for we contend that the property that is in this $6,000 is the debt due to the plaintiff, and that that debt and property exists, and has its *situs* wherever plaintiff resides.

That the notes and written contract of sale do not constitute the property, is evidenced by another reason. Suppose they should be lost or destroyed by fire, or in any other

manner: if they constituted the property, then the rights of both plaintiff and Lovatt would cease, and the plaintiff's property would be gone, just the same as if he owned a threshing machine and it should burn up, or he had a sum 'in greenbacks and they should be destroyed; in these events his property would be destroyed beyond recovery. That he would be placed in this position by the loss of the notes and contract of sale, will not be contended. Hence we say that these notes and written contract of sale do not constitute the property, and it is immaterial where they are situate. They are merely the *evidence* by which plaintiff establishes, or can prove his property, and if they should be destroyed, he can prove his rights and his *property*—to-wit, his debt—by secondary evidence, and his property would exist just the same, and he could have just the same benefit from it after the destruction of the notes and contract of sale, as during their existence. This being intangible personal property of his, the plaintiff should have listed it in Plum Grove township, and it being assessed against him by the county clerk as by law provided, the plaintiff having failed and neglected to list it, he cannot avoid paying tax thereon.

But the counsel for plaintiff cites numerous authorities to show that this rule of *mobilia sequuntur personam* is not of universal application, and does not apply when the question of taxation is being considered. We think that not one of the cases cited by him is applicable to this case, and will briefly review those that we have been able to examine. In 17 How. Pr. Rep., 201, the case was of a banker living in New Jersey, but doing business with others as a banker in New York. It was held that his *bank stock* and *stock in business* in New York was to be taxed there, under a statutory provision of New York. We also have a statute requiring stockholders in banks and banking associations to be assessed on the value of their shares of stock in the city or township where such bank or banking association is situate, but this does not and cannot decide anything upon a question of the nature involved in this case. In *Hoyt v. Commissioner*

*of Taxes*, 23 N. Y., 228, the relator lived in New York, and had capital employed *in business* in New Orleans; was a merchant in the latter city. In 14 Minn., 252, the property in question was *machinery* shipped by plaintiffs from Chicago to Minnesota to be sold, and was there sold. In *City of St. Louis v. Wiggins Ferry Co.*, 40 Mo., 580, the question was upon the taxation of a *ferry boat*. In *Wilkey v. City of Pekin*, 19 Ill., 160, the subject-matter of taxation was a *steamboat*. In *Powell v. City of Madison*, 21 Ind., 335, the subject-matter was *pork;* and in this last case the court say, "It may be true that for the purpose of taxation the *situs* of such property as *debts*, corporation stocks and such intangibilities may be regarded *as the domicile of the owner*." In *Reimard v. Shepard, Treas. of Vigo Co.*, 27 Ind., 286, the question of taxation arose in regard to *hogs* packed in Vigo county, which had money, labor and skill there expended upon them by which their value was enhanced, and their condition as a merchantable commodity changed. In *St. Louis v. The Ferry Co.*, 11 Wallace, 423, the question was of taxing a *ferry-boat* plying across the Mississippi river, and the court expressly avoid deciding "whether the personal property of a resident of one state situate in another could be taxed in the former." In all these cases the subject-matter of taxation was tangible personal property, and should we concede for argument sake that this class of property has a *situs* separate and apart from the domicile of the owner, it by no means follows that *debts* and other intangible personal property do, for they are separate and distinct classes and kinds of property, having no similarity and no resemblance; and while under some circumstances the reason for the adoption of the rule of *mobilia sequuntur personam* might cease as to the former class, the same reasons nor any others do not exist as to the latter class. The former are capable of having a *situs* of themselves, a place where they are situated, where they may be seen, and handled, which may be a different place from the residence of the owner. Not so of debts and intangible personal property. They cannot be seen or handled. If reduced to writing, the

writing constitutes but the evidence of the property, and not the property itself. The property in the intangibles is attendant upon, or attached to the person of the owner; it constitutes a part of his resources, and a portion of the wealth of the state of which the creditor is a resident just as much where the debtor resides in a different state as where he resides in the same.

Plaintiff's counsel also cites Story on the Conflict of Laws, § 550. There the author was considering property in regard to the power the nation, within whose border it is situate, has over it, in especial reference to proceedings by attachment, etc., against the property; and in reference to that subject, his language we admit to be good law; but his language written in reference to *one particular subject-matter* cannot be indiscriminately applied to all subject-matters, and has no reference to the subject of taxation. In 48 N. Y., 390, cited by plaintiff, the court say that the maxim of *mobilia sequuntur personam* does not to the full extent apply for the purposes of taxation. This leaves us to draw the inference that *it does apply to some extent;* and if to any extent certainly it will apply in such a case as ours. Cases in 21 Vt., 152, and 51 Barb., 352, are seemingly against us; but in each of these cases the money was loaned for profit, and not when due paid to the owner, but reinvested, and both principal and interest continually kept reinvested by the agents, while such is not the case before the court. Then again the statute in Vermont was different from ours.

Plaintiff contends further, that these notes, if taxable at all, are taxable in the state of Illinois, and cites several sections of the Illinois statutes. In the first place the notes were *not moneys;* and in the second place they were not loaned, invested, nor controlled by Gill & Co., who were simply the depositary of them, and all they had to do was to receive the money and transmit it to plaintiff and hand over the deed to Lovatt; the money when paid could not by them be either *loaned, invested,* or *otherwise controlled;* and even if

it could have been, the notes could not, and it is *the notes*, and the property there is in them, and the contract of sale, that we have to deal with. In this case there is *no money* in the custody of Gill & Co., but simply some evidences of indebtedness. But it is immaterial what the laws of Illinois are, for property may sometimes be subject to taxation in two different states. *McCormick v. Fitch*, 14 Minn., 252; *Clapp v. City of Burlington*, 1 Am. Rep., 357; *Duer v. Small*, 17 How. Prac., 204; 27 Ind., 286. But whether this $6,000 is taxable in Illinois, or not, if it is taxable by the laws of our state the tax should be sustained, for it is a local question. Our right to tax is of necessity against the plaintiff as a person, and is not and cannot be against the property, as it would be in case of real estate; and the property being intangible, even if a tax should be levied against plaintiff for this property in Illinois, the courts there would have no power to enforce the collection of the tax. The property is not of that class that could be seized for the tax. But to avail him anything the plaintiff would have to show, not only that the property was taxable in that state, but also that he, or his agent, was actually taxed there for this property, and that the tax had been paid; and as he makes no showing whatever upon either point, he must fail in this view of the case. Plaintiff is enjoying the benefit of our laws, and is protected by them; and these same laws by which he comes into this court and asks relief, say he shall bear his proportion of the burdens which the existence of these laws imposes upon the whole people, by paying taxes upon his property. This he has not done, and it is this he is seeking to avoid. He might have some equity in his claim, (but not any law,) if he showed to this court that he paid taxes on this property in Illinois, or that he paid taxes on the land by him sold and contracted to be sold to Lovatt, but this he fails to show; and even this would not entitle him to the affirmative relief he seeks, but it would be a circumstance that might appeal to the equitable sense of the court.

The opinion of the court was delivered by

VALENTINE, J.: The only question involved in this case is, whether the plaintiff Wilcox is liable to pay taxes on certain supposed personal property which he is supposed to own and possess in this state. The facts of the case are substantially as follows: "In the year 1868 the plaintiff agreed in writing to sell certain real estate he then possessed in the state of Illinois, to one Daniel Lovatt, for a price agreed upon between them, and Lovatt gave his notes for the amount, it being agreed that the notes were to be left at the bank of Charles F. Gill & Co. in the town of La Harpe, Hancock county, Illinois, and as fast as said Lovatt should make payment on said notes from time to time the plaintiff should convey to him a proportionate amount of said real estate. The plaintiff made no deed to Lovatt for said real estate at the time of the sale, nor did Lovatt give any mortgage to secure the payment of the notes, or execute any other instrument of writing than the notes, and said agreement to sell, which he also signed. Before the plaintiff could be required to convey any part of the real estate to Lovatt, he (Lovatt) must have paid an amount equal to the value of eighty acres; and whenever an amount was paid equal in amount to the value of another eighty acres, then a conveyance was to be executed by plaintiff to Lovatt for such eighty acres; and so on, till all the land should be paid for. The payments were to be made one year apart; and should Lovatt fail in any payment he was to forfeit any payment made after the last preceding conveyance. Six thousand dollars remained unpaid on the first of March 1872, and is the same $6,000 placed on the tax-roll by the clerk of Butler county in said year as the personal-property assessment of said Wilcox. The land was to remain the property of plaintiff till the payments were made as before stated. The notes never had been in the state of Kansas, and never out of the state of Illinois, nor in any other place than the bank before stated. The contract or

1. Assessment and taxation. Lands sold conditionally; unpaid purchase-money.

39 — 14 KAS.

agreement to sell the lands between plaintiff and said Lovatt was in writing, executed by both parties, and contained substantially the conditions above set forth." The tax complained of was levied for the year 1872 on said $6,000. The plaintiff was on the first day of March of that year and has since been a resident of said Butler county. "The land still unconveyed on March 1st 1872 was of the value of $6,000." Now we suppose that it will be admitted that it is not the intention of the laws of Kansas to attempt to collect taxes for general revenue except upon property, and except upon property within the jurisdiction of the state of Kansas. Hence, if the contingent debt coming from Lovatt to the plaintiff is not property in and of itself, and aside from the real estate for which it was incurred, or if it is not property within the jurisdiction of the state of Kansas, then it cannot be taxed in Kansas. Then what is there in Kansas to be taxed? Certainly no tangible property; and not even any intangible property that needs any protection from our laws. Everything is and has been in Illinois—the consideration for the notes, the notes themselves, the place of payment, the persons to whom the notes are to be paid, and presumptively the payors, and the funds which must be used in paying the notes, all are in Illinois and have never been in Kansas. Nothing pertaining to the notes, or to the debt which they evidence, has ever been in Kansas except that the owner of the notes resides in Kansas. Every act which brought the notes or the debt into existence was performed in Illinois, and every act that may be performed in the future for their collection, payment, or extinguishment, must also be performed there. The claim that said debt is taxable in this state is founded entirely upon the maxim, *Mobilia sequuntur personam.* Under this maxim it is claimed that movable property follows the *residence* or *domicile* of the owner, (not his *person*,) and therefore that personal property may be taxed at the residence of the owner wherever he may be, and wherever the property may in fact be. This maxim would seem from its terms to apply to all movable property,

tangible as well as intangible, and it is generally so applied wherever it is applied at all. But the defendant desires to make a distinction. While he seems to admit that by the weight of judicial determination the maxim does not fully apply for the purposes of taxation to tangible movable property, yet he nevertheless claims that it does apply with all its force to intangible personal property. We think however he is mistaken. The weight of judicial authority seems to be that for the purposes of taxation the maxim does not fully apply even where the property is intangible. *People v. Gardner*, 51 Barbour, 352; *Catlin v. Hull*, 21 Vt., 152; *People v. Trustees, &c.*, 48 N. Y., 397; and other authorities cited in plaintiff's brief. This maxim is at most only a legal fiction; and Blackstone, speaking of legal fictions, says, "This maxim is invariably observed, that *no fiction shall extend to work an injury*, its proper operation being to prevent a mischief, or remedy an inconvenience that might result from the general rule of law." (3 Blackstone Com., 43.) Now as the state of Illinois and not Kansas must furnish the plaintiff with all the remedies that he may have for the enforcement of all his rights connected with said notes, debt, etc., it would seem more just, if said debt is to be taxed at all, that the state of Illinois and not Kansas should tax it, and that we should not resort to legal fictions to give the state of Kansas the right to tax it. Where land is sold and conveyed, and notes given for the purchase-money, we suppose the vendee may be taxed for the land and the vendor for the notes received for the purchase-money. But where the vendor still owns the land, and also owns it conditionally, as in this case, whether he can be taxed on both the land and the notes may be questionable. But that he should be taxed on both in Illinois, and on the notes in this state, would be highly unjust. In the case of *People v. Trustees, &c.*, 48 N. Y., 397, the following language is used by Earl, C. J., and concurred in by the full bench: "I am unable to see why the money due upon the land contracts must not be assessed in the same way. The debts due upon these con-

*2. In case of absolute sale and conveyance.*

tracts are personal estate, the same as if they were due upon notes or bonds; and such personal estate may be said to exist where the obligations for payment are held. Notes, bonds, and other contracts for the payment of money, have always been regarded and treated in the law as personal property. They represent the debts secured by them. They are the subject of larceny, and a transfer of them transfers the debt. If this kind of property does not exist at the place where the obligation is held, where does it exist? It certainly does not exist where the debtor may be, and follow his person. And while for some purposes in the law, by legal fiction, it follows the person of the creditor, and exists where he may be, yet it has been settled that for the purposes of taxation this legal fiction does not, to the full extent, apply, and that such property belonging to a nonresident creditor may be taxed in the place where the obligations are held by his agent." This decision would make the notes given in this case taxable at the banking house of said Charles F. Gill & Co. This decision does not affect the taxability of notes where both the owners of the notes and the notes are in the same state, although in different counties. Nor would it give the power to an owner of notes to fraudulently send them out of the state for the purpose of avoiding taxation on them where they rightfully belong. This case has been very ably presented to this court by counsel on both sides, and for a full discussion of the questions involved we would refer to their briefs.

The judgment of the court below is reversed, and cause remanded with the order that judgment be rendered for the plaintiff on the agreed statement of facts, perpetually enjoining the said county treasurer from collecting said tax.

All the Justices concurring.