In the matter of the Estate of CYRUS JEFFERSON, deceased.

May 26, 1886.

**Estates of Decedents—Proof of Claims.**—Proceedings to establish claims against the estate of a deceased person need not be formally entitled. Any description which will identify them is sufficient.

**Same—Personal Taxes.**—A personal tax is a debt for the purpose of proof against, and payment from, a decedent's estate.

**Personal Taxes—Evidence of Levy.**—A tax-list or tax duplicate, duly certified by the county auditor, as required by Gen. St. 1878, c. 11, § 52, is *prima facie* evidence of the due levy of the taxes in it.

**Same—Credits and Loans of Non-resident.**—A demand for money loaned may have an actual *situs* other than the domicile of the owner. The owner may give it a business *situs* at another place; as where he has the money at such place, for investment and reinvestment, as a permanent business, under the full control and management of an agent resident at such place. In such case, the money being invested here may, under the laws of this state, be taxed here.

In the course of the administration of the estate of Cyrus Jefferson, deceased, in the probate court for the county of Washington, the county auditor presented as a claim against the estate statements for personal taxes for the years 1882 and 1883, on credits secured by mortgages, amounting to about the sum of $122,000. These claims were entitled in the following manner, viz.: "Office of County Auditor of Washington County, Minn., March 26, 1884. Estate of Cyrus Jefferson to Washington County, Dr." The executors filed an answer and objections to these claims. The matter was tried in the probate court, and an order made allowing the claims. From this order the executors appealed to the district court, where the order of the probate court was affirmed by *Crosby*, J.

On the trial of the issues made the claimant was allowed to introduce in evidence, against the objection of the executors, the "tax duplicate," or the tax-list of personal property, for the city of Stillwater, in the county of Washington. The executors appeal from the judgment of the district court.

*Searles, Ewing & Gail* and *Gordon E. Cole*, for appellants.

Debts due by residents of this state to non-residents, secured upon real property in this state, are not within the tax jurisdiction of this state. *State Tax on Foreign-held Bonds*, 15 Wall. 300; *City of Davenport* v. *Miss. & Mo. R. Co.*, 12 Iowa, 539; *People* v. *Eastman*, 25 Cal. 601; *Johnson* v. *City Council of Oregon City*, 3 Oregon, 13; *Com.* v. *Hays*, 8 B. Mon. 1; *Collins* v. *Miller*, 43 Ga. 336; *Hunter* v. *Board of Supervisors*, 33 Iowa, 376; Wharton on Conflict of Laws, § 80; Burroughs on Taxation, § 41.

It was not the design of our legislature to tax this property. Compare Gen. St. 1866, c. 11, § 1, with Laws 1877, c. 6, § 1, and Gen. St. 1878, c. 11, § 1. *City of St. Paul* v. *Merritt*, 7 Minn. 198, (258.)

*I. W. Castle* and *Fayette Marsh*, for respondent.

GILFILLAN, C. J. Cyrus Jefferson, who died since 1883, was from 1869 to his death a resident and citizen of the state of New York. During that time he loaned and invested large sums of money upon bonds and notes secured by mortgages of real estate in the county of Washington, in this state, which loans and investments were made by and through his agent, William M. McCluer, residing in Stillwater in said county. The principal remitted the money for investment to his agent, and the latter had authority to negotiate and make loans for his principal upon such real-estate mortgage security as in his judgment seemed sufficient; and also authority to receive and collect such loans, principal and interest, when due; to discharge mortgages securing the same; and to reloan and reinvest moneys thus collected in new loans, on new securities; and during said time he did so loan and invest, receive, collect, and discharge mortgages, and reloan and reinvest, for and in the name of his principal, having full control over the matter. In the years 1882 and 1883 the amount so invested and controlled by said agent was $122,000. The agent in those years having refused, on the request of the assessor in said city, to list such loans for taxation, the latter listed and assessed the amount thereof as the personal property of said Jefferson, and the same was entered on the tax-lists, and the taxes in each of those years extended over it. Jefferson having died, and administration of his estate having been opened in Washington county, claims for taxes were presented to the

probate court as claims against the estate. They were allowed by the probate court, and, on appeal to the district court on questions of law alone, the decision of the probate court was affirmed.

There are some questions made which we will consider before coming to the main question in the case:

*First.* That the proceedings are not properly entitled. The statute does not prescribe nor indicate any formal mode for entitling proceedings to establish claims against the estates of deceased persons. Any entitling or description of the proceeding which will identify it is sufficient.

*Second.* That taxes are not debts which can be proved against the estates of deceased persons. It is not material whether a personal tax is a debt, in the sense that an action against the person may be maintained to recover it. It is at least a claim against the property which survives the death of the person against whom it is levied, and remains a claim against his estate. The statute regards it as a debt to be paid out of the estate. In prescribing the order of preference in which debts shall be paid, where the estate is not sufficient to pay all, it provides (Gen. St. 1878 *c.* 53, § 38,) that, after paying the necessary expenses of the funeral, last sickness, and administration, the executor or administrator shall "pay the debts against the estate in the following order. * * * *Second,* public rates and taxes." This, we think, is conclusive that, for the purpose of proof and payment out of the estate, a personal tax is a debt.

*Third.* That the tax duplicate is not evidence of the levy and existence of the tax. In support of this, defendant cites the case of *Howes* v. *Gillett,* 23 Minn. 231, in which it was held that, as an official document, a tax duplicate is proper evidence of its own existence and contents, but not of any of the tax proceedings anterior to itself. That case arose under the General Statutes of 1866. Subsequently (in 1874) what is now Gen. St. 1878, *c.* 11, § 52, (Laws 1874, *c.* 1, § 86,) was enacted. It reads:

"It shall be the duty of the county auditor to make, in each tax book or list, a certificate in the following form, viz.:

"I, A. B., auditor of ———— county and state of Minnesota, do hereby certify that the following is a correct list of the taxes levied

on the real and personal property in the [town or district, as the case may be] of ———, for the year 18—.

"Witness my hand and official seal this ——— day of ———.

"——— County Auditor."

In the hands of the treasurer, as authority to him to receive and collect the taxes, the duplicates or tax-lists were as effectual before this certificate was required as since. We can conceive of no reason why the legislature should have provided for the certificate, except to give the duplicates or lists greater authenticity; that is, to make them official evidence of the levy of the taxes. The rate of state tax is certified by the state auditor to the county auditor; the record of the amount to be raised for county tax is in his office; the taxes voted by incorporated cities, townships, and school-districts are certified to him; and from the amounts, of which the evidence is thus in his office, he calculates the rates, and completes the levy by making out the lists. It would seem strange (though it certainly was so before 1874) that his completed work should prove nothing but the fact of its completion. To simplify the proof of the levy, and to avoid the inconveniences that would arise whenever proof of the levy might be necessary, if it were required to go back of the duplicates, was, we think, the purpose of requiring the official certificate of the auditor; and that it was intended to make the certified list *prima facie* evidence of the due levy of the taxes on it.

The main question in the case is, can credits due to a resident of another state, from a resident within this state, for moneys loaned and invested by, and which credits are managed and controlled by, an agent of the creditor, resident within this state, be taxed here, under the present statute?

In the case of *City of St. Paul* v. *Merritt*, 7 Minn. 198, (258,) it was decided that credits due to a non-resident were not, under the statutes then in force, taxable in this state. That case was different on the facts from this in one essential particular, to wit, that in that case there was no resident agent who had loaned and invested the money, and who had the management and control of the investment,— a particular which may go to the power of the legislature to tax credits

due non-residents. The court, without questioning the power of the legislature to provide for taxing credits due non-residents, held that it had not manifested an intention to do so, because it had made no provision for the assessment of that kind of property of non-residents, while it had made full provision for the assessment of all personal property of residents, and of certain kinds of tangible personal property of non-residents. The general designation in the statutes then in force (Pub. St. 1858, c. 9, § 1,)—"all property, real and personal, within the territory, not expressly exempted therefrom, shall be subject to taxation in the manner provided by law"—was sufficient to include credits due non-residents which had a *situs* here; but the omission from the statute of any provision for assessing that kind of property was significant, indeed, conclusive, of an intention not to include it in such general designation.

The designation in the present statute (Gen. St. 1878, c. 11, § 1,) is also broad enough to include credits due non-residents, but which have a *situs* here: "All real and personal property in this state, and all personal property of persons residing therein, * * * is subject to taxation." Unless the words in this clause "and personal" are to be held surplusage, the clause shows an intent to tax personal property in the state of persons residing elsewhere, as well as the personal property of residents; and we find nothing in the following sections of the chapter to indicate that those words do not have their full natural meaning. Adequate provision is made for its assessment:

"Sec. 7. Personal property shall be listed in the manner following: *First.* Every person of full age and sound mind, being a resident of this state, shall list all his moneys, credits," etc. "*Second.* He shall also list separately, and in the name of his principal, all moneys and other personal property invested, loaned, or otherwise controlled, by him as the *agent or attorney, or on account of any other person or persons, company or corporation, whatsoever;* and all moneys deposited subject to his order, check, or draft, and credits due from or owing by any person or persons, body corporate or politic."

"Sec. 8. Personal property, except such as is required in this act

to be listed and assessed otherwise, shall be listed and assessed in the county, town, or district where the owner or *agent* resides."

It is to be taken, therefore, as the intent of the statute, that credits, to whomsoever owing, are taxable here if they can be regarded as personal property *in this state;* that is, situated in this state. To justify the imposition of tax by any state, it must have jurisdiction over the person taxed, or over the property taxed. As Jefferson was not a resident of this state, there was no jurisdiction over him. But if the property on account of which these taxes were unpaid was within this state, the state had jurisdiction to impose them as it might impose a tax upon tangible personal property permanently situated here, and to enforce the taxes against the property. The authorities which we cite in support of the proposition that the credits taxed had a *situs* here, fully sustain this.

For many purposes the domicile of the owner is deemed the *situs* of his personal property. This, however, is only a fiction, from motives of convenience, and is not of universal application, but yields to the actual *situs* of the property when justice requires that it should. It is not allowed to be controlling in matters of taxation. Thus, corporeal personal property is conceded to be taxable at the place where it is actually situated. A credit, which cannot be regarded as situated in a place merely because the debtor resides there, must usually be considered as having its *situs* where it is owned,—at the domicile of the creditor. The creditor, however, may give it a business *situs* elsewhere; as where he places it in the hands of an agent for collection or renewal, with a view to reloaning the money and keeping it invested as a permanent business. *Catlin v. Hull,* 21 Vt. 152; *People v. Trustees,* 48 N. Y. 390; *People v. Gardner,* 51 Barb. 352; *People v. Smith,* 88 N. Y. 576; *Williams v. Board of Sup'rs of Wayne Co.,* 78 N. Y. 561; *Boardman v. B'd of Sup'rs of Tompkins Co.,* 85 N. Y. 359; *Wilcox v. Ellis,* 14 Kan. 588; *Fisher v. Commrs. of Rush Co.,* 19 Kan. 414; *State v. St. Louis Co. Ct.,* 47 Mo. 594; *Board of Sup'rs v. Davenport,* 40 Ill. 197; *Goldgart v. People,* 106 Ill. 25; *People v. Home Ins. Co.,* 29 Cal. 534; *Redmond v. Commissioners,* 87 N. C. 122; *City of New Albany v. Meekin,* 3 Ind. 481, (56 Am. Dec. 522;) *Foresman v. Byrns,*

68 Ind. 247; *Battle* v. *Corporation of Mobile*, 9 Ala. 234, (44 Am. Dec. 438;) *Finch* v. *York Co.*, 19 Neb. 50, (26 N. W. Rep. 589.)

In *People* v. *Smith*, the New York court held these very credits not taxable in that state, because they were not personal property within that state, but that they were within this state; that is, had a *situs* here.

The obligation to pay taxes on property for the support of the government arises from the fact that it is under the protection of the government. Now, here was property within this state, not for a merely temporary purpose, but as permanently as though the owner resided here. It was employed here as a business by one who exercised over it the same control and management as over his own property, except that he did it in the name of an absent principal. It was exclusively under the protection of the laws of this state. It had to rely on those laws for the force and validity of the contracts on the loans, and the preservation and enforcement of the securities. The laws of New York never operated on it. If credits can ever have an actual *situs* other than the domicile of the owner, can ever be regarded as property within any other state, and as under obligation to contribute to its support in consideration of being under its protection, it must be so in this case.

Judgment affirmed.