On Petition fob. Rehearing.
Howard, J.
It would not be difficult to take the several arguments in appellants’ numerous briefs, filed in favor of the petition for a rehearing of this case, and arrange them, consecutively, in such a manner that they should mutually destroy one another. So, we sometimes find a series of algebraic equations, each most formidable, when looked at by itself, but all of which, when added together, term by term, are mutually canceled, and there is nothing left but zero equals zero.
It is first contended that we erred in holding that Mr. Nash’s “bonds, stocks, notes and mortgages executed by nonresidents were liable to taxation in Indiana.” If we understand that contention, it must mean that bonds, stocks, notes and mortgages can be taxed only in the state where they are.issued or executed, that is, in the state where-the debtor resides, or where the company issuing the stock is located. But, in the case chiefly relied upon in appellants’ main brief, Railroad Co. v. Pennsylvania (Case of the State Tax on Foreign-held Bonds), 15 Wall. (U. S.) 300, it was held by the Supreme Court of the United States that the State of Pennsylvania could not tax bonds issued by a Pennsylvania, railroad company, but owned and held in a foreign state. And, in Senour v. Ruth, 140 *591 liad. 318, also relied upon in the same brief, it was held by this court that credits resulting from loans, evidenced by promissory notes, but owned and held by nonresidents in another state, even though secured by mortgages on property in this State, are not taxable here. There can be no doubt that the two cases cited are good law; but, if so, what becomes of appellants’ contention, that “bonds, stocks, notes and mortgages executed by nonresidents” are not taxable in Indiana?
According to the two authorities cited, the bonds, stocks, notes and mortgages, although executed by nonresidents, are to be taxed in the state where they are held and owned, it being immaterial where they were executed. In Railroad Co. v. Pennsylvania, supra, and in Senour v. Ruth, supra, the effort was made to tax the obligations where they were executed; but the courts held that they must be taxed where they are held and owned. Taking appellants’ contention, that Mr. Nash’s bonds, stocks, notes and mortgages could not be taxed here, because they were executed by nonresidents, and taking the authorities' cited by appellants, that they could not be taxed in the state where they were issued or executed, because they were held and owned elsewhere, and we have the beautiful result that they could be taxed nowhere.
This would suggest a most excellent plan by which the holders of this class of property might escape taxation altogether. For example, let those in Ohio convert all their means into bonds, stocks, notes' and mortgages, issued and executed by residents of Ohio, and let those of Indiana invest likewise in bonds, stocks, notes and mortgages, issued and executed by residents of Indiana; and then let the holders of the *592 Ohio securities move into Indiana, and the holders of the Indiana securities move into Ohio; and it is done.
Those wealth movers must, however, be careful not to bring their domicile along with them. They may, of course, indeed they must, live and do business in the state into which they move; but they should be cautious to have their residence and domicile elsewhere. The complaint before us is drawn very circumspectly in this regard. It is carefully alleged: “That said Job M. Nash was a citizen of and domiciled in another state than the State of Indiana.” It was, indeed, a wise precaution that suggested this manner of statement, and so avoided any indication as to the particular state where Mr. Nash’s domicile might be. Otherwise, the state of which he was actually a citizen, and the taxing officers of such state, might have taken advantage of the information thus incautiously given, and have assessed his bonds, stocks, notes and mortgages. But, provided the allegation is always, as in this case, that he was “a citizen of and domiciled in another state,” then his personal property subject to taxation, like the youth’s gold under the rainbow, will always be a little further off, and so escape taxation altogether.
The property owner, to be sure, may have certain occasional twinges of conscience, — that he is sponging off the community, that he is receiving the benefits of the laws for the protection of his property, that the courts are open to him for the collection of his bonds and notes and the foreclosure of his mortgages; in a word, that all his personal property and business interests are as carefully guarded as if he were “a citizen of and domiciled in” the state; but that all these things are done for him at the expense of his neighbors, the citizens of the state, who pay their taxes regularly from year to year. Those twinges of conscience will, *593 however, grow more dulled from year to year, and finally, perhaps, cease altogether; and, in time, if he perseveres, he will come to regard it as his sacred right to bring all his bonds, stocks, notes and mortgages into the state, and so set himself up in the real estate, loan and mortgage business, without being at all hampered by local or state taxes, at the same time that he enjoys all the rights, privileges and protection of citizenship.
Notwithstanding all this, we are still firmly of the opinion, as heretofore expressed, that if personal property is used in business in this State it ought to be assessed for taxes, even though the owner may claim to be a citizen of and domiciled in another state; and that this must be true of moneys and credits as well as of other forms of personal property. We are still of opinion, also, that a business may be done in buying and selling property, including bonds, stocks, notes and mortgages, and in making loans and investments, collecting and reloaning from year to year, and that if the moneys and securities so used are retained in this state, they should be subject to taxation here, quite the same as any other kind of property. For purposes of taxation, the term personal property includes bonds, notes, choses in action and other evidences of credits. 1 Desty. Taxn. 328; Cooley Taxn. 270-272, notes; Boyd v. Selma, 96 Ala. 144, 16 L. R. A. 729. And the situs of such property for taxation must be the place where it is used in business. 1 Desty. Taxn. 323; Cooley Taxn. 15; Burroughs Taxn. 59; In re Jefferson, 35 Minn. 215, 28 N. W. 256; People v. Davis, 112 Ill. 272; Redmond v. Board, etc., 87 N. C. 122; Board, etc., v. Leonard, 57 Kan. 531, 34 L. R. A. 810, 46 Pac. 960.
Counsel next contend that we erred in holding that Mr. Nash’s notes and mortgages, executed by residents *594 of Indiana, were taxable here, except when he had an agent in the state. The first contention was that obligations executed by residents of another state could not be taxed here; now it is, that those executed in Indiana cannot be taxed here. One of these contentions must overthrow the other; they cannot both stand, even according to counsels’ own argument. But the argument itself is fallacious. The test as to where the right to tax property exists is its place of location and use; the place where, if a security or obligation, it is a credit, not where it is a debit. It is quite immaterial whether the notes or other obligations were executed or were due by residents or nonresidents of the State. If they were owned, held' and used in Indiana, they were taxable here; and this, too, whether the business here in which they were used was con ducted by Mr. Nash in person or by some one else for him.
The third contention of appellant, that we erred in holding that certain Indiana notes already taxed were again subject to taxation, shows that counsel have not well considered the opinion of the court. No such holding was made. If, as a matter of fact, the auditor thus retaxed any property which had been already taxed, appellants should have pointed it out to the auditor and asked to have the lists corrected in that particular. But even if such error were made it would be no justification of appellants’ request to enjoin the collection of all the taxes, including those which were justly due.
In the fourth place, counsel contend that we erred in holding that the auditor had jurisdiction to make the assessment of the omitted property. That is an idle claim. The statute expressly gives such power to the auditor, on his compliance with the conditions therein stated as to notice and other matters. Section *595 142, of the Tax law, section 8560, Burns’ R. S. 1894 (Acts 1891, p. 199); section 6416, R. S. 1881; Reynolds v. Bowen, 138 Ind. 434. Due notice was given. The statute requires the auditor, that “if the person claiming to own such property, or occupying it, or in possession thereof, resides in the county and is not present, he shall give such person notice, in writing, of his intention to add such property to the tax duplicate.” The only persons in the county claiming to own such property or any part of it, or occupying or in possession of it, were one of the executors and a trustee under the will. To these he gave the statutory notice, and this would, doubtless, have been sufficient. But, through superabundance of caution, the auditor gave notice also to the remaining executor, a resident of Ohio. Besides, it is to be remembered, the assessment and taxation of property is not the bringing of an action in court. The power to prescribe how such assessment and taxation shall be made resides in the legislature, the supreme law-making power of the State. Taxes are not debts, in the ordinary sense of that term, but are rather contributions for the support of the body politic; and it is competent for the legislature to provide how such contributions shall be collected. Geren v. Gruber, 26 La. Ann. 694; Catlin v. Hull, 21 Vt. 152. Following the mode of procedure prescribed by the legislature, if there were no one in the county who claimed to own the property here in question, or who occupied or had possession of 'it, the State would not thereby be deprived of the means of taxing it. It is only such an owner, claimant or occupant as “resides in the county and is not present” before the auditor that need be notified. The assessment officer is not required to go outside his own county to give notice to any one of his intention to assess omitted property. *596 In this case, the auditor did more than he was required to do.
The fifth contention is, that we did not hold that appellants were entitled to take evidence to show that Mr. Nash was a nonresident of the State. For the purpose of the complaint, however, it was sufficient to have made the allegation of nonresidence, and we are concerned only with the sufficiency of that pleading.
It is next said, that we erred in holding that the trust estate was liable to pay taxes which Mr. Nash had neglected to pay. The State and the municipalities to which Mr. Nash owed taxes are not concerned specially with any trust he may have created for the management of a part of his estate. He died owing certain taxes which he had avoided paying for a great many years. Those taxes have now been assessed in pursuance of statutory provisions for the assessment of omitted property. The taxes are a lien on all property in the county belonging to his estate. This lien can be released only by payment of the taxes. He could not by giving away his property relieve it of the burden cast upon it by the law. It is immaterial to the State whether the property is found in the custody of executors, administrators, trustees, heirs or devisees. The State seeks out the property itself,,or any part of it that can be found, and demands of those claiming to own or use it that the taxes be paid. Nor is the seventh contention any more available. The property of the estate cannot be changed from one form into another, so as to avoid the taxes due and unpaid.
The complaint shows that the county auditor, in pursuance of the provisions of the statutes, placed upon the tax duplicate certain personal property omitted from his assessment lists by Job M. Nash, deceased, for the years from 1881 to the time of his death, *597 in 1893. All the presumptions are in favor of the correctness of the proceedings of the auditor; and if, in fact, any of the chattels so placed upon the duplicate as omitted property were placed there wrongfully, such fact must be shown by those who call in question the regularity of the auditor’s official acts. A negative complaint, or one that is silent in any essential matter, will not do; the errors, if any, must be pointed out.
In a supplemental brief, counsel, not questioning the correctness of the statement in the principal opinion, that “the complaint nowhere states that the omitted property was not in the State at the time when the owner or holder failed to return it for taxation,” yet contends, in effect, that the allegation that Mr. Nash was not at such time a resident of the State is equivalent to an allegation that his personal property and business were not here. We think, however, that we have shown, both in the original opinion and in this, that the location of personal property, particularly for the purpose of taxation, does not necessarily follow the domicile of the owner. The property is taxable where it is owned, held and used in business, and where it is protected by the laws of the community in which it is so held and used; and the circumstance that the owner, whether for honest or other motives, claims a residence elsewhere, is not controlling. It is, of course, quite different, as already many times said, where the property is temporarily in the State, as, for instance, where securities are sent into the State for collection, inspection, safe keeping, or the like. It would be a most immoral doctrine, however, to hold that securities could not be taxed at the residence of the owner, because they were held at another place, and could not be taxed where they were held, because the owner resided elsewhere. It would be a still more grievous wrong to hold that a man might retain his *598 residence in New York or Ohio, but bring his property, whether money, or bonds, stocks, notes and mortgages, to Indiana, and here engage in a general real estate, loan and investment business, and so avoid paying taxes at the place where he must call upon the law, its courts and officers to protect and aid him in the safe and profitable carrying on of his business. A mere statement of such a claim is enough to show its outrageous character.
Nor were appellants ignorant of the necessity of alleging that the bonds, stocks, notes and mortgages were not in the State of Indiana at the time when the owner or holder failed to return them for taxation. Speaking of certain of those mortgages, as to one of the years in question, it was not found difficult to allege in the complaint: “That said eleven mortgages last aforesaid were not, nor were any of them, in the State of Indiana, nor were they or any of them in the possession or under the power or control of said agent or of any one else in the State of Indiana on the 1st day of April, 1893.” This allegation itself might not be sufficient to show that even the mortgages named might not have been taxable for the year named; but we have set out the allegation as showing appellants’ ability- to express in vigorous and definite language the fact that the mortgages were not in the State, and hence not subject to taxation. But if it be so emphatically alleged that the mortgages named were not in the State when the auditor claimed they were taxable, we may well presume- that the remaining bonds, stocks, notes and mortgages, for all the other years, were in the State of Indiana at the several times when they should have been returned for taxation. The maxim quoted by counsel is here in point: Expressio unius, exclusio alterius. Mr. Anderson, in his Dictionary of Law, paraphrases this maxim as follows:
*599 “Express mention of one act, condition, stipulation, class or number, person or place, implies the exclusion of another or others not mentioned.” It would have been easy for the complaint to have alleged, if it were true, that none of Mr. Nash’s securities, as placed upon the duplicate, were in the State of Indiana at the several times when the auditor held that they were liable for taxation, but that, at such times, as was the case in Senour v. Ruth, supra, Railroad Co. v. Pennsylvania, supra, and other cases cited by counsel, the securities were “held and owned by nonresidents in another state.”
In Pullman’s Car Co. v. Pennsylvania, 141 U. S. 18, the Supreme Court of the United States, citing numerous authorities, said: “For the purposes of taxation, as has been repeatedly affirmed by this court, personal property may be separated from its owner; and he may be taxed, on its account, at the place where it is, although not the place of his own domicile, and even if he is not a citizen or a resident of the state which imposes the tax.”
The following, from the recent vigorous opinion of Mr. Justice Brewer, speaking for the Supreme Court of the United States, in Adams Express Co. v. Ohio State Auditor, 166 U. S. 185, 17 Sup. Ct. 604, may fitly conclude this opinion, which has, perhaps, been unnecessarily extended:
“It is a cardinal rule which should never be forgotten that whatever property is worth for the purposes of income and sale it is also worth for purposes of taxation. * * * Substance of right demands that whatever be the real value of any property, that value may be accepted by the state for purpose of taxation, and this ought not to be evaded by any mere confusion of words. Suppose an express company is incorporated to transact business within the limits of *600 a state, and does business only within such limits, and fox* the purpose of transacting that business purchases and holds a few thousands of dollars’ worth of horses and wagons, and -yet it so meets the wants of the people dwelling in that state, so uses the tangible property which it possesses, so transacts business therein that its stock becomes in the markets of the state of the actual cash value of hundreds of thousands of dollars. To the owners thereof, for the purposes of income and sale, the corporate property is worth hundreds of thousands of dollars. Does substance of right require that it shall pay taxes only upon the thousands of dollars of tangible property which it possesses? Accumulated wealth will laugh at the crudity of taxing laws which reach only the one and ignore the other, while they who own tangible property, not organized into a single producing plant, will feel the'injustice of a system which so misplaces the burden of taxation. * * *
“It is suggested that the company may have bonds, stocks or other investments which produce a part of the value of its capital stock, and which have a special situs in other states or are exempt from taxation. If it has, let it show the fact. Courts deal with things as they are, and do not determine rights upon mere possibilities. * * * 'Where is the situs of this intangible property? Is it simply where its home office is, where is found the central directing thought which controls the workings of the great machine, or in the state which gave it its corporate franchise; or is that intangible property distributed wherever its tangible property is located and its work is done? Clearly, as we think, the latter. * * i:' It may be true that the principal office of the corporation is in New York, and that for certain purposes the maxim of the common law was, ‘mobilia personam sequuntur; ’ but that maxim *601 was never of universal application, and seldom interfered with the right of taxation. * * * It would certainly seem a misapplication of the doctrine expressed in that maxim to hold that by merely transferring its principal office across 'the river to Jersey City the situs of $12,000,000.00 of intangible property, for purposes of taxation, was changed from the state of New York to that of New Jersey.”
And the following from the same opinion: “In the complex civilization of to-day a large portion of the wealth of a community consists in intangible property, and there is nothing in the nature of things or in the limitations of the federal constitution which restrains a state from taxing at its real value such intangible property. Take the simplest illustration: B, a solvent man, purchases from A certain property, and gives to A his promise to pay, say, $100,000.00 therefor. Such promise may or may not be evidenced by a note or other written instrument. The property conveyed to B may or may not be of the value of-$100,000.00. If there be nothing in the way of fraud or misrepresentation to invalidate that transaction, there exists a legal promise on the part of B to pay A $100,000.00. That promise is a part of A7s property. It is something of value, something on which he will receive cash, and which he can sell in the markets of the community for cash. It is as certainly property, and property of value, as if it were a building or a steamboat, and is as justly subject to taxation; It matters not in what this intangible property consists, —whether privileges, corporate franchises, contracts or obligations. It is enough that it is property which though intangible exists, which has value, produces income and passes current in the markets of the world. To ignore this intangible property, or to hold that it is not subject to taxation at its accepted value, *602 is to eliminate from the reach of the taxing power a large portion of the wealth of the country.”
Petition overruled.