# Richmond

## COMMONWEALTH OF VIRGINIA AND STATE CORPORATION COMMISSION V. APPALACHIAN ELECTRIC POWER COMPANY.

November 17, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

*James S. Barron* and *Hunton, Williams, Anderson & Gay,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The Commonwealth of Virginia and the State Corporation Commission by this writ of error are seeking a review and reversal of a judgment whereby the Commonwealth was ordered to refund to the Appalachian Electric Power Company $37,701 for taxes assessed and paid on certain intangibles.

The facts out of which this controversy arose follow.

The Appalachian Electric Power Company, hereinafter called petitioner, is a Virginia corporation engaged in producing and distributing electricity for light and power throughout Virginia and West Virginia. It owns two subsidiary corporations engaged in the same business—one, the Kentucky and West Virginia Power Company, chartered and organized under the laws of Kentucky, and the other, Kingsport Utilities, Inc., a corporation organized under the laws of Virginia and domesticated in the State of Tennessee.

Prior to 1929, petitioner acquired $8,378,000 in bonds payable to bearer, executed by one or the other of these two corporations. Payment of these bonds was secured by deeds of trust covering all the properties in Kentucky and Tennessee owned by these two companies, respectively.

Petitioner, in order to obtain the necessary capital to conduct its business in Virginia and West Virginia, conveyed all of its real estate, tangible personal property and intangibles, including the bonds of the two subsidiary companies, to the Bankers Trust Company, corporate trustee, and B. W. Jones, individual trustee, both of the State of New York. Bonds executed by petitioner and now outstanding, payment of which is secured by the last-mentioned conveyance, exceed $85,000,000. Until there is default in payment or some violation of other conditions of the deed of trust, possession and use of the real estate and tangible personal property in express terms is retained by petitioner; but the intangibles, including the bonds of the two subsidiary companies, were delivered to the corporate trustee, to be held by it under the terms and conditions set forth in the deed of trust.

Such of these intangibles as were held in 1926, 1927, 1928 and 1929 were assessed to, and taxes thereon paid by, petitioner; the tax for the year 1929 having been paid under protest and appeal taken. In 1930 petitioner failed to make return of the intangibles in question, claiming that they were not owned by it within the purview of section 229 of the Tax Code (Code 1930, page 2198), and that,

even if they were they had no taxable situs in the Commonwealth of Virginia. The Corporation Commission did not agree with this contention and assessed this property against petitioner. The amount was paid under protest and petitioner filed its petition in the Circuit Court of the city of Richmond, alleging that the assessment was erroneous and praying for relief, with the result above noted.

The Attorney-General contends that the trial court was in error in not holding that the intangibles in question have a taxable situs in this State. Petitioner contends that, regardless of the taxable situs of the intangibles, they do not come within the purview of section 229 of the Tax Code. This latter contention is based on the fact that, by the provisions of section 228 of the Tax Code (Code 1930, page 2197), every corporation furnishing water, or heat, light and power is required to report to the State Corporation Commission all of the real and personal property in the State "belonging to it;" while section 229 in authorizing the State tax on intangibles of such companies uses the words, "owned by;" that the legislature in using the different terms and applying one to one class of property and the other to another class did so advisedly; and that under the rule of strict construction of tax statutes in favor of the citizen and against the State, intangibles held by corporations, engaged in the business described, are not subject to taxation unless they are owned free of liens, *i. e.,* the absolute, complete and unqualified title to intangibles must be in such companies before this class of property comes within the purview of Tax Code, section 229.

While the meaning of the two phrases may be different, depending on the circumstances in which they are used, we deem it unnecessary to determine the question, because, in our opinion, the recent decisions of the Supreme Court of the United States extending the application of the provisions of the Fourteenth Amendment to the Constitution of the United States are clearly decisive of the case.

The first case which prohibited more than one State from

assessing tangible personal property with a succession or inheritance tax was *Frick* v. *Pennsylvania*, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316, wherein it was held (1) that the exaction of a tax beyond the power of the State to impose was a taking of property in violation of the due process clause; (2) that while the tax laws of a State may reach every object which is under its jurisdiction, they cannot be given extraterritorial operation; (3) that as respects tangible personal property, having an actual situs in a particular State, the power to subject it to State taxation rests exclusively in that State, regardless of the owner's domicile. *First Nat. Bank of Boston* v. *State of Maine*, 284 U. S. 312, 52 S. Ct. 174, 178, 76 L. Ed. 313. By this decision, the ancient maxim, *mobilia sequuntur personam,* as applied to tangible personal property was eliminated root and branch, but the maxim was applied to intangibles.

In *Farmers' Loan & T. Co.* v. *Minnesota*, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000, it was held that the imposition of an inheritance tax by Minnesota on obligations of that State or its municipalities, owned by a resident of New York, where they were subject to an inheritance tax, violates the Fourteenth Amendment. The court said that choses in action may acquire a situs for taxation, other than at the domicile of the owner, if they have become an integral part of some local business, but that the record in that case did not require the court to decide whether they should be taxed a second time at the owner's domicile.

In *Brooke* v. *City of Norfolk*, 277 U. S. 27, 48 S. Ct. 422, 72 L. Ed. 767, the facts were that legal title and possession of certain intangibles were in a non-resident trustee, with directions, however, to pay the income and interest therefrom to Mrs. Brooke for life, then to her daughters for their lives, and upon their death the corpus of the estate passed to their heirs *per stirpes*. The beneficiaries were all residents of Virginia. The court held that the corpus of the

estate was beyond the jurisdiction of Virginia and had no taxable situs here.

The above case was followed by *Craine* v. *Commonwealth of Virginia*, 278 U. S. 562, 49 S. Ct. 27, 73 L. Ed. 506, in a *per curiam* opinion. There the bonds were delivered to a non-resident trustee, with directions to pay the income or interest to Craine for life, at his death to his wife, and at her death the corpus of the estate passed to the children of Craine, all residents of Virginia. The court held that the bonds were not taxable in this State.

In *Safe Deposit & T. Co.* v. *Commonwealth of Virginia*, 280 U. S. 83, 50 S. Ct. 59, 60, 74 L. Ed. 180, 67 A. L. R. 386, Kellam, domiciled in Accomac county, Virginia, delivered stocks and bonds to a corporate trustee in Maryland in whom was vested the legal title; under the provisions of the trust instrument the trustee was directed to accumulate the interest and income from the estate and pay one-half of the principal along with the accumulated income to one son of Kellam when he became twenty-five years of age, and the other one-half of the estate along with the accumulated interest to the other son when he reached the same age, and if either died without issue before reaching twenty-five years of age, the corpus of the estate together with the accumulated interest to be paid to the surviving son. Soon after creating the trust Kellam died. His personal representative, who qualified on his estate, and his two sons were all residents of Virginia. The court held the bonds were not taxable by Virginia.

The Supreme Court of the United States has declared that the fiction that movable property follows the person must yield to the real facts, and can no longer be applied when the established facts are inconsistent with the fiction. In *First Nat. Bank of Boston* v. *State of Maine, supra,* it was held that shares of stock, like bonds, notes and credits, can be subject to an inheritance or succession tax only in the State of decedent's domicile, and for the purpose of levying this tax the ancient maxim will be applied.

The court in this case virtually placed stocks in the same class of intangibles as bonds and negotiable notes, and having previously held that bonds, negotiable notes and credits might acquire a taxable situs in a State other than the domicile of the owner, said:

"We do not overlook the possibility that shares of stock, as well as other intangibles, may be so used in a state other than that of the owner's domicile as to give them a situs analogous to the actual situs of tangible personal property. See *Farmers' Loan* [*& Trust*] *Company Case, supra,* 280 U. S. at page 213, 50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000. That question heretofore has been reserved, and is still reserved to be disposed of when, if ever, it properly shall be presented for our consideration."

The conclusions from these opinions summarized by counsel for petitioner seem inescapable: (1) That no property can be subjected to taxation by more than one State; (2) that this rule likewise applies to a tax on inheritances; (3) that the tax situs of tangibles (like real estate) is in the State where they are located, the fiction of *mobilia sequuntur personam* being no longer applicable to tangibles; (4) that where intangibles form the basis of an inheritance tax this fiction applies and such tax is properly imposed in the State of the domicile of the decedent; (5) that, where intangibles are sought to be taxed, the fiction of *mobilia sequuntur personam* may be applied, but this fiction must give way to the fact of legal title, possession and control in another State.

It follows that the only debatable question in the present case is whether the intangibles assessed for taxation in Virginia have acquired a taxable situs in the State of New York. The bonds in question were executed by non-residents, payable to bearer "at the office or agency" of non-residents "in the Borough of Manhattan, City of New York" and were in the possession of the corporate trustee in New York during the taxable year. The Attorney-General admits that, under the circumstances disclosed, if the legal

title had passed to the non-resident trustee the bonds would not have been subject to taxation in this State, but contends that the bonds so held by the trustee were merely held in pledge, and in support of this contention cites *Putnam* v. *Ford,* 155 Va. 625, 155 S. E. 823, 827, 71 A. L. R. 1217. In that case the question was as to the right of the Commonwealth to assess against a customer shares of stock which were purchased through a broker and held by him for advances made on account of the purchase. It involved the ordinary relations between a broker and a purchaser of stock. The court quoted with approval from *Austin* v. *Hayden,* 171 Mich. 38, 137 N. W. 317, 322, Ann. Cas. 1915B, 894, as follows:

" * * * the customer buying on margin becomes owner of the stock, although the broker who has purchased it for him can hold it as a pledge for advances made in obtaining it."

The general rule governing the relations of the pledgor and pledgee must yield to an express agreement between the parties concerned. See *Pizer* v. *Hunt,* 253 Mass. 321, 148 N. E. 801; *Richardson* v. *Shaw,* 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981. By the express terms of the deed of trust it was provided, (1) that the bonds should be delivered to the trustee; (2) that title to them should be vested in the trustee; (3) that they should be held by the trustee for thirty years, or more, or until the $85,000,000 in obligations of petitioner had been redeemed, and both in the trust instrument and in the bonds it was provided that the holder should be deemed and treated as "the absolute owner thereof for all purposes."

It is only by the application of the doctrine in *mobilia sequuntur personam* that the bonds have any taxable situs in this Commonwealth. The general rule for the application of this maxim, with a new limitation, was stated in *Safe Deposit & T. Co.* v. *Commonwealth of Virginia, supra,* as follows:

"Ordinarily this court recognizes that the fiction of

*mobilia sequuntur personam* may be applied in order to determine the situs of intangible personal property for taxation. *Blodgett* v. *Silberman,* 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749. But the general rule must yield to established fact of legal ownership, actual presence and control elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice whether through double taxation, or otherwise."

■ Here, by contract of the parties, we have the legal title, actual presence and control of the bonds in question beyond the jurisdiction of this Commonwealth. The Attorney-General contends that, notwithstanding, the facts bring this case within the express terms of the above language of the court whose interpretation of the Fourteenth Amendment is final, it is not controlling because the petitioner has the right, so long as it is neither in default of the payment of the interest on its $85,000,000 outstanding bonds nor has violated other conditions of the deed of trust, to exercise certain rights over the bonds in question, *i. e.,* it can exchange, extend, renew, or refund any or all of such bonds. This provision standing alone might indicate an extensive control over these securities, but the facts are that petitioner owns the voting stock in both subsidiary companies and that this stock is also held by the named trustees upon the same terms and conditions as the bonds in question. Section 68 of the trust deed provides:

"While the company shall not, to the knowledge of the trustees, be in default hereunder, it shall have the right to vote upon all shares of the stock of any subsidiary corporation pledged hereunder for all purposes not inconsistent with the provisions or purposes hereof * * *."

While much freedom is given petitioner in the management of its properties so long as it is not in default, the clear intention of the parties to the deed was to protect the holders of the bonds of petitioner and to do nothing to impair the value of the securities held by the trustees for their benefit. Thus the rights retained by petitioner over the

bonds in question are limited and not inconsistent with the purpose of the trust. It is clear that petitioner has no right to the possession of the bonds in question, nor any control over them inconsistent with the purpose for which they are held. Whatever change is made, whether payment of the bonds held by the trustee is anticipated or new security substituted therefor, the proceeds, in case of payment, or the substituted security, must be delivered to the trustee, to be held by it in accordance with the terms and conditions of the trust instrument.

Title, possession and control of the property, for all practical purposes, are beyond the territorial limits of Virginia and within the territorial limits of New York, which under the decisions heretofore cited gives the property in question a taxable situs in the latter State. The fact that interest has been and will be received by petitioner in Virginia, so long as it is not in default, does not affect the right of the State of New York to impose a tax upon this property. See *Brooke* v. *City of Norfolk, supra,* and *Craine* v. *Commonwealth of Virginia, supra.*

The fact that the State of New York imposes no such tax on this class of property is immaterial. The controlling question is, has that State the right to tax the property? We think it has. If so, Virginia, under the decisions, has no such right.

For the reasons stated the judgment is affirmed.

*Affirmed.*