# IN RE ESTATE OF GUY O. FRANK.[1]

No. 29,936.

June 22, 1934.

[1]Reported in 257 N. W. 330.

152

*Kelly, Thomas, Morck & Dillon, George A. McGee,* and *Harry E. Dickinson,* for appellants.

*Harry H. Peterson,* Attorney General, and *Harry W. Oehler,* Deputy Attorney General, for the state.

*Ira C. Oehler, amicus curiae,* filed a brief, and argued the case orally, on behalf of appellants.

*G. A. Youngquist* and *Fowler, Carlson, Furber & Johnson, amici curiae,* filed a brief on behalf of the contention of appellants.

*Harry H. Peterson,* Attorney General, *Harry W. Oehler,* Deputy Attorney General, and *Roy C. Smelker,* for the state.

HILTON, Justice.

Appeal from an order imposing an inheritance tax of $997.76 with interest.

Guy O. Frank died May 22, 1931, a resident of North Dakota, and left surviving him May Frank, his wife, and Catherine Ann Frank, his adopted daughter, the appellants here. For 20 years prior to his death the three resided in and remained continuously in North Dakota. On December 8, 1928, Frank transferred, conveyed, and turned over to the Northwestern Trust Company of St. Paul, Minnesota (now First Trust Company) in trust, 20 promissory notes for $3,000 each, dated November 15, 1928, one of said notes being due November 1 of each year commencing with November, 1929. The notes bore interest at six per cent, were secured by a mortgage upon real estate in North Dakota, and were there payable. The notes were duly indorsed and the mortgage assigned to the trust company; the mortgage and assignment were properly recorded. At the same time Frank also gave to the trust company $15,000 in cash. The declaration of trust recited delivery of the property, and in it the trust company acknowledged receipt and undertook

and agreed to administer the same for the following uses and purposes:

"Said trustee shall take, hold, possess, care for and manage the said property and any additions thereto and any and all money and property which may come unto its hands as trustee hereunder, shall invest and reinvest all principal sums of money, including authorized accumulations of income, in good income-bearing securities authorized for the investment of trust funds in the hands of a trust company under the laws of the state of Minnesota, provided further that all such investments shall be made subject to the approval of the settlor during his lifetime. The said trustee shall collect and receive the income arising from the said investments and, after paying all such expenses and charges as may be reasonably incurred and lawfully imposed in the administration of said trust, shall dispose of and distribute the net annual income and principal as follows:"

The agreement then provided that the net annual income should be paid in monthly instalments to Frank during his life; after his death such income to be paid to May Frank during her life; and at her death to Catherine Ann Frank. At the death of Catherine the income from one-half of the trust fund was to be paid to her issue until the youngest of said issue should have attained the age of 21 years, at which time the trust should terminate and the balance of that half paid in equal parts to said issue; if Catherine left no issue, then that one-half was to go to the heirs at law of Guy O. Frank, as was also the other half at her death. Frank reserved to himself, and at his death to May Frank, the right to draw from the principal sufficient funds "to meet any needs or emergency"; after their death withdrawals from the principal for the needs of Catherine were placed in the "sole discretion" of the trustee. After reaching the age of 35 years Catherine had the power to draw from the principal the sum of $1,000 a year until reaching the age of 50 years, and thereafter during the remainder of her life she could draw $2,000 a year from the principal. The agreement further provided:

"The beneficiaries of the trust hereby created, shall be without power to alienate, assign or otherwise anticipate or encumber their interest therein and the same shall be enjoyed by them, free from the claims of creditors.

&ast; &ast; &ast; &ast; &ast;

"The settlor reserves to himself the right to amend the terms of this trust and to withdraw a part or the whole thereof or to terminate the trust in toto without consent of the trustee at any time by instrument in writing duly executed and acknowledged and delivered to the trustee."

In December, 1929, and in April, 1931, Frank exercised the power reserved to him and amended the trust agreement. The context of those amendments does not appear, and they are stated to be unimportant to the issues here. He had never exercised his power of revocation. At the time of Frank's death the trust property had increased to $76,002.93. Such property, in addition to the mortgage originally deposited with the trust, which had been reduced to $54,000, included securities of various railway companies, electric power companies, a telephone company, United States Liberty bonds, and bonds of a Minnesota municipality. The trustee paid a moneys and credits tax to the state of Minnesota for the years 1929, 1930, and 1931.

It is conceded that the succession of the property covered by the trust agreement is subject to taxation. The only question is whether it is subject to such taxation by the state of Minnesota. It is contended that the imposition of the tax was in violation of the due process of law clause in the fourteenth amendment to the federal constitution. This question is one that is governed by decisions of the United States Supreme Court. That court by recent decisions has pronounced certain definite rules:

(1)   The power to impose a death transfer tax upon tangible personal property having an actual situs in a particular state rests exclusively in that state, regardless of the domicil of the owner. Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. ed. 1058, 42 A. L. R. 316.

(2)   Certain specific kinds of intangibles, such as bonds, notes, and credits, are subject to the imposition of an inheritance tax only by the state in which the owner is domiciled, notwithstanding the bonds are registered in another state, and the notes secured upon lands located in another state, resort to whose laws may be necessary to secure payment.   Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000; Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. ed. 1056, 72 A. L. R. 1303; Beidler v. South Carolina Tax Comm. 282 U. S. .1, 51 S. Ct. 54, 75 L. ed. 131; First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 178, 76 L. ed. 313, 77 A. L. R. 1401.

(3) . Intangibles may acquire situs for taxation other than that of the owner's domicil if they have become integral parts of some local business.   City of New Orleans v. Stempel, 175 U. S. 309, 20 S. Ct. 110, 44 L. ed. 174; Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. ed. 701 (see In re Estate of Jefferson, 35 Minn. 215, 28 N. W. 256); State Bd. of Assessors v. Comptoir National D'Escompte, 191 U. S. 388, 24 S. Ct. 109, 48 L. ed. 232; Metropolitan L. Ins. Co. v. City of New Orleans, 205 U. S. 395, 27 S. Ct. 499, 51 L. ed. 853; Liverpool & L. & G. Ins. Co. v. Orleans Assessors, 221 U. S. 346, 31 S. Ct. 550, 55 L. ed. 762, L. R. A. 1915C, 903; Safe D. & T. Co. v. Virginia, 280 U. S. 83, 50 S. Ct. 59, 74 L. ed. 180, 67 A. L. R. 386; Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000; First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401.

The two latter cases, both of which involved an inheritance tax on intangibles, although definitely holding that intangibles can be subjected to such a tax only by the state in which the owner is domiciled, recognized that bonds, stocks, and credits may acquire a taxable situs elsewhere.   In the latter opinion the Supreme Court stated [284 U. S. 331]:

"We do not overlook the possibility that shares of stock, as well as other intangibles, may be so used in a state other than that of the owner's domicil as to give them a situs analogous to the actual situs of tangible personal property.   See Farmers Loan Company

case, 280 U. S. at page 213, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000. That question heretofore has been reserved, and it still is reserved to be disposed of when, if ever, it properly shall be presented for our consideration."

See In re Estate of Kennedy, 186 Minn. 160, 242 N. W. 697.

The Farmers L. & T. Co. case, 280 U. S. 204, in recognizing the above quoted exception to the domiciliary rule, cited among others the case of Bristol v. Washington County, 177 U. S. 133. That case arose in Minnesota. The United States Supreme Court approved the decision of In re Estate of Jefferson, 35 Minn. 215, 28 N. W. 256, in which this court stated [at p. 220] that intangibles acquire a situs other than at the domicil of the owner when the owner places the property "in the hands of an agent for collection or renewal, with a view to reloaning the money and keeping it invested as a permanent business." The exception to the domiciliary rule was applied in Safe D. & T. Co. v. Virginia, 280 U. S. 83, which case foreshadowed the decision in Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, that intangibles could be taxed by only one state. The Safe D. & T. Co. case, 280 U. S. 83, involved a personal property tax, as distinguished from inheritance tax, upon intangible property. If the above quotation from the case of First Nat. Bank v. Maine, 284 U. S. 312, is an indication that the same rule should apply to inheritance taxes, and we think it is, then the decision in Safe D. & T. Co. v. Virginia, 280 U. S. 83, is controlling here, for the facts therein are strikingly similar to those here.

In that case one Lucius J. Kellam, domiciled and residing in Virginia, transferred and delivered to the Safe Deposit & Trust Company of Baltimore, Maryland, stocks and bonds of corporations, in trust. The trust company was given the power to collect the income arising therefrom and to accumulate the net income and to pay one-half of such accumulated income and one-half of the principal to each of two sons when arriving at the age of 25 years; and, if either died without issue before reaching that age, the corpus of the estate together with the accumulated income was to be paid to the surviving son. Kellam reserved to himself the power of revocation

but died without exercising it. The trust company paid the taxes regularly to the state of Maryland. Kellam's personal representative and his two sons were all residents of Virginia. An assessment for taxation in Accomac county, Virginia, was sustained by the state supreme court. In reversing, the United States Supreme Court stated [280 U. S. 92]:

"Ordinarily this court recognizes that the fiction of *mobilia sequuntur personam* may be applied in order to determine the situs of intangible personal property for taxation. Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. ed. 749. But the general rule must yield to established fact of legal ownership, actual presence and control elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice, whether through double taxation or otherwise. * * * Here, where the possessor of the legal title holds the securities in Maryland, thus giving them a permanent situs for lawful taxation there, and no person in Virginia has present right to their enjoyment or power to remove them, the fiction must be disregarded. It plainly conflicts with fact; the securities did not and could not follow any person domiciled in Virginia. Their actual situs is in Maryland and can not be changed by the *cestuis que trustent*. * * * Intangible personal property may acquire a taxable situs where permanently located, employed and protected. [Citing cases.] Here we must decide whether intangibles—stocks, bonds—in the hands of the holder of the legal title with definite taxable situs at its residence, not subject to change by the equitable owner, may be taxed at the latter's domicil in another state. We think not. The reasons which led this court in Union Refrig. Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493, and Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. ed. 1058, 42 A. L. R. 316, to deny application of the maxim *mobilia sequuntur personam* to tangibles apply to the intangibles in appellant's possession. They have acquired a situs separate from that of the beneficial owners. The adoption of a contrary rule would 'involve possibilities of an extremely serious character' by permitting double taxation, both

unjust and oppressive. And the fiction of *mobilia sequuntur personam* 'was intended for convenience, and not to be controlling where justice does not demand it.' "

The pertinent facts in the instant case cannot be distinguished from those in the above case. As before stated, the only difference is that here the tax is one on the transfer of the property, while in that case it was a direct tax on the property. On principle we see no distinction; the situs of the property in either case must first be determined; the same rules apply in determining the situs whether the tax to be imposed be a direct tax on the property or upon the succession thereof; to impose a tax of either kind the state must have jurisdiction of the thing to be taxed or of the owner. Here the state does not have jurisdiction of the owner, but we do think it had jurisdiction of the property. The legal title of the corpus of the estate was in a trustee domiciled in this state; all the securities were present here; and the trustee had control thereof, with the right to make collections thereon and reinvest authorized income and moneys received in payment on the principal. The only person who had the right to remove the corpus of the estate from the state was the settlor. He is dead. The surviving beneficiaries have no such right; they were expressly prohibited from alienating, assigning, or otherwise encumbering their interest. Where the equitable owner cannot remove the property, manifestly the rule of *mobilia sequuntur personam* does not apply; that rule, as stated in the above quotation, "must yield to established fact of legal ownership, actual presence and control elsewhere." The property here involved has a more permanent situs here than the ordinary tangible personal property, for such property can usually be moved from place to place at the will of the owner. That the income is to be paid to the beneficiary cannot affect the right of the state to tax the transfer of the corpus, which has an irrevocable situs within its borders.

The supreme court of the state of Virginia, in Commonwealth of Virginia v. Appalachian E. P. Co. 159 Va. 462, 166 S. E. 461, 464 (1932), after discussing the recent United States decisions here-

inbefore referred to, applied the rule laid down by the case of Safe D. & T. Co. v. Virginia, 280 U. S. 83. In that case a resident of Virginia conveyed all of his property, real, tangible personalty, and intangibles to trustees domiciled in the state of New York. The owner retained until default in payment or some violation of other conditions the possession and use of the real estate and tangible personal property, but the intangibles were delivered to the corporate trustee. The court stated [159 Va. 471]:

"Title, possession and control of the property, for all practical purposes, are beyond the territorial limits of Virginia and within the territorial limits of New York, which under the decisions heretofore cited gives the property in question a taxable situs in the latter state. The fact that interest has been and will be received by petitioner in Virginia, so long as it is not in default, does not affect the right of the state of New York to impose a tax upon this property. * * * The fact that the state of New York imposes no such tax on this class of property is immaterial. The controlling question is, has that state the right to tax the property? We think it has. If so, Virginia, under the decisions, has no such right."

The United States Supreme Court denied a petition for writ of certiorari. 288 U. S. 613, 53 S. Ct. 405, 77 L. ed. 987.

The state cites the cases of DeGanay v. Lederer, 250 U. S. 376, 39 S. Ct. 524, 63 L. ed. 1042, and Burnet v. Brooks, 288 U. S. 378, 53 S. Ct. 457, 77 L. ed. 844, 86 A. L. R. 747. Those cases, while perhaps of some value in determining the situs of intangibles for purposes of taxation, are not, we think, of any controlling force here. They involved the power of congress under the fifth amendment to the federal constitution to tax intangibles (and the income therefrom) located in this country but owned by aliens. As pointed out in the latter case [288 U. S. 401], there is an "established distinction" between the power of congress to tax property of residents of foreign countries and the power of a state to tax property owned by a resident of another state.

Appellant cites the case of Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. ed. 830, wherein the Supreme Court held that

Wisconsin had a right to impose an inheritance tax upon property transferred by a resident of Wisconsin to a trustee in Illinois under a trust agreement similar to the one here involved. However, Illinois (which was there in the same relative position as Minnesota is here) had also imposed such a tax, and the Supreme Court conceded that Illinois had such a right. The case is of very little weight now because at the time the decision therein was written the rule permitting taxation by more than one state of the same property, tangible or intangible, and the transfer thereof after death, was then in effect. The later cases of Frick v. Pennsylvania, 268 U. S. 473; Safe D. & T. Co. v. Virginia, 280 U. S. 83; Farmers L. & T. Co. v. Minnesota, 280 U. S. 204; and First Nat. Bank v. Maine, 284 U. S. 312, all hereinbefore cited, definitely changed that rule, so that now such taxation may be imposed by only one state. Whether intangibles, having acquired, as here, a situs by use other than that of the domicil of the owner, may also be subjected to a death transfer tax by the state of the domicil of the owner, has not as yet been decided by the Supreme Court of the United States. Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 213; First Nat. Bank v. Maine, 284 U. S. 312. If in a situation such as we have here the domiciliary rule also applies, then the Bullen case, 240 U. S. 625, is as favorable for the holding in the instant case as it is against it; if the newer rule, that of taxation by one state only, governs, then that case is obsolete.

Appellant advances the further argument that the notes at least cannot be taxed by Minnesota because of the fact that they are payable in North Dakota and secured by real estate in that state and therefore are properly taxable in that state. If North Dakota also has the right to impose a transfer tax upon the property, which we doubt, such right must, under authority of Farmers L. & T. Co. v. Minnesota, 280 U. S. 204; Baldwin v. Missouri, 281 U. S. 586; and First Nat. Bank v. Maine, 284 U. S. 312, rest upon the rule of *mobilia sequuntur personam*. As pointed out earlier in this opinion, there are now but three rules by which the taxable situs of property may be determined: (1) Tangible property is taxable

by the state in which it is located; (2) intangibles by the state in which the owner is domiciled; (3) the domiciliary rule "must yield to established fact of legal ownership, actual presence and control elsewhere." The third rule is an exception to the second. As we construe the recent United States decisions, there are no other exceptions.

We conclude that the property here involved has acquired a situs separate from that of the domicil of the beneficial owners and that for purposes of taxation its situs is in Minnesota and subject to a transfer tax by this state.

Affirmed.

*DEVANEY, Chief Justice,* took no part.

*JULIUS J. OLSON, Justice* (dissenting).

The present proceeding is not one to impose a tax upon property but upon a right of succession. It is my view that the conclusion here reached is in direct conflict with First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401.

*LORING, Justice* (dissenting).
I concur with Mr. Justice Olson.

AFTER REARGUMENT.

On November 23, 1934, the following opinion was filed:

*STONE, Justice.*

The reargument of this case has brought us to the conclusion that our first decision was wrong. It is unnecessary to repeat the facts, except to emphasize that all investments made by the Minnesota trustee were "subject to the approval" of Mr. Frank "during his lifetime." He reserved the income to himself during life and also, and this is especially important, he had the right to revoke the trust at any time. The operative thing, therefore, in transferring the property, under the trust or otherwise, was his death, while domiciled in North Dakota, without having exercised the power of revocation.

It is immaterial that the intangibles in question may have been subject, in the possession of the trustee, to the Minnesota moneys

162

and credits tax. It is not the property which Minnesota is now seeking to tax. It is rather and only the transfer of, or succession to, or both (see In re Estate of Rising, 186 Minn. 56, 242 N. W. 459), the title and beneficial enjoyment of the property which took place by reason of Mr. Frank's death in North Dakota. It is now settled law that intangibles such as those presently involved "are subject to the imposition of an inheritance tax only by the domiciliary state." First Nat. Bank v. Maine, 284 U. S. 312, 326, 52 S. Ct. 174, 176, 76 L. ed. 313 (following Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000). As said in the Maine case [284 U. S. 329] "death duties rest upon the power of the state imposing them to control the privilege of succession," and that, naturally, is the state of the domicil of the deceased—in this case, North Dakota.

Our original opinion, erroneously we now conclude, was put upon the conclusion that the property covered by the trust had acquired a situs in Minnesota "analogous to the actual situs of tangible personal property" (see First Nat. Bank v. Maine, 284 U. S. 312, 331). But the controlling fact remains that the transfer which took place upon Mr. Frank's death did not occur here. The "fundamental conception" is "that the transmission from the dead to the living of a particular thing, * * * is an event which cannot take place in two or more states at one and the same time." "Since death duties rest upon the power of the state imposing them to control the privilege of succession," the domiciliary state is the one having the power to levy a death tax, if any. The thing the transfer of which is taxed is "an incorporeal property right which attaches to the person of the owner in the state of his domicil."

The involved trust property had not acquired, in Minnesota, "a situs analogous to the actual situs of tangible personal property" within the reservation of the Maine case. It was not part of any local business conducted by Mr. Frank. We repeat that the transfer thereof on his death took place under the laws of North Dakota. Hence the mere fact that the property, the title and enjoyment of which were the subject of the transfer, had a quasi situs here is just as unimportant as was the fact that, in Blodgett v. Silberman,

277 U. S. 1, 48 S. Ct. 410, 72 L. ed. 749, a partnership property, all of it, had an actual situs in New York. Yet the right of Connecticut to impose tax upon the transfer of the whole interest of one of the partners, who died a resident of Connecticut, was upheld. The right of North Dakota to levy a death tax upon the transfer here involved is sustained by Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. ed. 830. It remained for Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, and First Nat. Bank v. Maine, 284 U. S. 312 (overruling many previous decisions), to determine that, the domiciliary state having the sole right to impose a death tax, no other state can have a similar right. We hold that North Dakota has the sole right to tax the transfer here in question; and that Minnesota has none.

Order reversed.

*HILTON, Justice* (dissenting).

For the reasons stated in the original opinion, I dissent.

